## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

THRIVENT FINANCIAL FOR
LUTHERANS,

        Interpleader Plaintiff,

            v.

HEATHER L. ROOKS, JUDITH L. ROOKS
as Trustee for B.R. and E.R., and DOHERTY
FUNERAL HOMES, INC.

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**C.A. No. 06-628 (JJF)**

**Action in Statutory Interpleader**

**PUBLIC VERSION**

### FIRST AMENDED COMPLAINT IN INTERPLEADER

COMES NOW, Thrivent Financial for Lutherans ("Thrivent"), by and through

undersigned counsel, pursuant to 28 U.S.C. §1335 and files this Complaint in Interpleader

against defendants jointly and severally, and in support thereof states as follows:

### JURISDICTION, PARTIES, AND VENUE

1.     This matter is brought pursuant to 28 U.S.C. § 1335.

2.     Venue lies within this District under the provisions of 28 U.S.C. § 1397.

3.     Plaintiff Thrivent is a Wisconsin corporation duly authorized to transact the

business of insurance in the State of Delaware, with its principal place of business in the

State of Wisconsin.

4.     Defendant, Heather L. Rooks ("Heather"), is an adult resident of the State of

Delaware and may be served process pursuant to 28 U.S.C. §2361.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS
DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

5.    Defendant, Judith L. Rooks ("Judith"), is an adult resident of the State of Florida and may served process pursuant to 28 U.S.C. §2361.

6.    Defendant, Doherty Funeral Homes, Inc., is a corporation authorized to do business in the state of Delaware with its its principal place of business located at 58 River Woods Drive, DE 19809 and may be served with process pursuant to 28 U.S.C §2361.

## CAUSE OF ACTION

7.    Thrivent's Complaint in Interpleader arises out of conflicting claims to the proceeds of a policy of Adjustable Life Insurance, number 2306144 (hereinafter "the Policy") issued to Glenn I. Rooks, Sr. ("Glenn, Sr."). Ex. A, Policy.

8.    The deceased, Glenn, Sr., passed away on or about August 8, 2006. Ex. B, Death Certificate.

9.    Prior to his death, in or about May 2006, Glenn Sr. submitted a change of beneficiary form naming his daughter, Heather, as primary beneficiary and his children, Glenn I. Rooks, Jr. ("Glenn, Jr."), Brigett F. Rooks ("Brigett") and Evan T. Rooks ("Evan") as first contingent beneficiaries. Ex. F, Beneficiary Designation Form

10.    In June 2006, Judith wrote to Thrivent to advise of her position that any change of beneficiary is invalid in light of the terms of a Stipulation and Order entered on or about April 8, 1991 in the matter entitled *In Re the Marriage of Judith Lynne Rooks v. Glenn Irvins Rooks, Sr.,* Petition No. 669-90.

11.    The Stipulation and Order contains the following provision regarding life insurance:

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

> Respondent [Glenn, Sr.] has a $50,000.00 life insurance policy with Lutheran Brotherhood [the predecessor to Thrivent]. Respondent agrees not to cash in, withdraw any of the proceeds or take a loan against said policy until after his youngest child attains the age of 21. Respondent furthermore agrees to name his children, [B.R.] and [E.R.], as beneficiaries under this policy, naming Judith Rooks as Trustee of each child's share until each child attains the age of 21.

Ex. C, Stipulation and Order.

12.     Based upon the Stipulation and Order, defendant Judith contends that the proceeds of the Policy should be paid to her, as Trustee, and that the change of beneficiary form naming Heather as primary beneficiary is invalid. *See* Ex. D, June 30, 2006 letter from Judith.

13.     Judith has demanded payment of the proceeds to her, as Trustee.

14.     Heather contends that the May 2006 change of beneficiary "is a legal, binding contract that supersedes the divorce decree/settlement with Judith Rooks." Ex. E, September 6, 2006 letter from Heather.

15.     On or about August 24, 2006, the Doherty Funeral Homes forwarded to Thrivent an Insurance Assignment form, which was executed by Heather, and purports to set over, assign and transfer unto Doherty Funeral Home $9,320.28 out of the proceeds of the policy. Ex. G, Correspondence from Doherty Funeral Home.

16.     Doherty Funeral Home seeks payment of $9,320.28 out of the proceeds of the policy.

17.     Defendants, Heather Rooks and Judith Rooks, and Doherty Funeral Homes, Inc. present rival and conflicting claims and are unable to resolve their conflicting claims

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

MEI\5926510.1

for the benefits of the Policy between themselves.

18.    By reason of the conflicting claims, Thrivent is unable to determine the rights of each of the claimants and is in great doubt as to which claimant is entitled to be paid the benefits. As a result, Thrivent is exposed to conflicting claims and potential multiple liability in the event it pays proceeds to the wrong party.

19.    Thrivent has no adequate measures or remedies to resolve the issues presented in this case.

20.    Thrivent claims no interest in the disputed benefits.

**WHEREFORE,** Thrivent respectfully requests:

(a)    This Court issue its process for all defendants;

(b)    Defendants be ordered to interplead and settle between themselves their rights and that, upon payment by the plaintiff of $50,000, plus accrued interest with the Court pursuant to Rule 67 of the Federal Rules of Civil Procedure and Rule 67.2 of the Local Civil Rules of this Court, plaintiff be discharged from all further liability with respect to the Policy arising from the death of Glenn, Sr.;

(c)    In the event that it is found that additional or other persons not yet named as parties to this action are or may be entitled to all or part of the death benefit payable under the Policy on account of the death of Glenn, Sr., this Court shall order such persons to be parties to this action and to respond to this Complaint in Interpleader;

(d)    Order that plaintiff be paid out of the funds remaining for distribution its costs, together with reasonable attorney's fees; and

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

ME1\5926510.1

(f)    Plaintiff has such further and additional relief as may be equitable and just.

**McCARTER & ENGLISH, LLP**

/s/ Christopher A. Selzer

By:_____
A. Richard Winchester (DE Bar ID #2641)
Christopher A. Selzer (DE Bar ID #4305_
919 North Market Street
Suite 1800
P.O. Box 111
Wilmington, Delaware  19899
(302) 984-6300
Attorneys for Plaintiff,
Thrivent Financial for Lutherans

OF COUNSEL

Robert P. Lesko
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
(973) 622-4444

Dated:  October 25, 2006

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS
DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THRIVENT FINANCIAL FOR LUTHERANS, | : |
| Interpleader Plaintiff, | :      C.A. No. 06-628            **Deleted:** _____ |
| | : |
| v. | :      **Action in Statutory Interpleader** |
| | : |
| HEATHER L. ROOKS, JUDITH L. ROOKS as Trustee for B.R. and E.R., and DOHERTY FUNERAL HOMES, INC. | :               Redacted |
| Defendants. | : |

### FIRST AMENDED COMPLAINT IN INTERPLEADER

COMES NOW, Thrivent Financial for Lutherans ("Thrivent"), by and through undersigned counsel, pursuant to 28 U.S.C. §1335 and files this Complaint in Interpleader against defendants jointly and severally, and in support thereof states as follows:

### JURISDICTION, PARTIES, AND VENUE

1. This matter is brought pursuant to 28 U.S.C. § 1335.

2. Venue lies within this District under the provisions of 28 U.S.C. § 1397.

3. Plaintiff Thrivent is a Wisconsin corporation duly authorized to transact the business of insurance in the State of Delaware, with its principal place of business in the State of Wisconsin.

4. Defendant, Heather L. Rooks ("Heather"), is an adult resident of the State of Delaware and may be served process pursuant to 28 U.S.C. §2361.

**Deleted:** ME1\5885339.1

5.    Defendant, Judith L. Rooks ("Judith"), is an adult resident of the State of Florida and may served process pursuant to 28 U.S.C. §2361.

6.    Defendant, Doherty Funeral Homes, Inc., is a corporation authorized to do business in the state of Delaware with its its principal place of business located at 58 River Woods Drive, DE 19809 and may be served with process pursuant to 28 U.S.C §2361.

Formatted: Bullets and Numbering

## CAUSE OF ACTION

Formatted: Bullets and Numbering

7.    Thrivent's Complaint in Interpleader arises out of conflicting claims to the proceeds of a policy of Adjustable Life Insurance, number 2306144 (hereinafter "the Policy") issued to Glenn I. Rooks, Sr. ("Glenn, Sr."). Ex. A, Policy.

8.    The deceased, Glenn, Sr., passed away on or about August 8, 2006. Ex. B, Death Certificate.

9.    Prior to his death, in or about May 2006, Glenn Sr. submitted a change of beneficiary form naming his daughter, Heather, as primary beneficiary and his children, Glenn I. Rooks, Jr. ("Glenn, Jr."), Redacted Rooks ( Redacted) and  Red . Rooks (" Red.") as first contingent beneficiaries. Ex. F, Beneficiary Designation Form

10.    In June 2006, Judith wrote to Thrivent to advise of her position that any change of beneficiary is invalid in light of the terms of a Stipulation and Order entered on or about April 8, 1991 in the matter entitled *In Re the Marriage of Judith Lynne Rooks v. Glenn Irvins Rooks, Sr.*, Petition No. 669-90.

11.    The Stipulation and Order contains the following provision regarding life insurance:

> Respondent [Glenn, Sr.] has a $50,000.00 life insurance policy with Lutheran Brotherhood [the predecessor to Thrivent]. Respondent agrees not to cash in, withdraw any of the proceeds or take a loan against said policy until after his youngest child attains

Deleted: MEI\5885339.1

-2-

the age of 21. Respondent furthermore agrees to name his children, [B.R.] and [E.R.], as beneficiaries under this policy, naming Judith Rooks as Trustee of each child's share until each child attains the age of 21.

Ex. C, Stipulation and Order.

12.     Based upon the Stipulation and Order, defendant Judith contends that the proceeds of the Policy should be paid to her, as Trustee, and that the change of beneficiary form naming Heather as primary beneficiary is invalid. *See* Ex. D, June 30, 2006 letter from Judith.

13.     Judith has demanded payment of the proceeds to her, as Trustee.

14.     Heather contends that the May 2006 change of beneficiary "is a legal, binding contract that supersedes the divorce decree/settlement with Judith Rooks." Ex. E, September 6, 2006 letter from Heather.

15.     On or about August 24, 2006, the Doherty Funeral Homes forwarded to Thrivent an Insurance Assignment form, which was executed by Heather, and purports to set over, assign and transfer unto Doherty Funeral Home $9,320.28 out of the proceeds of the policy. Ex. G, Correspondence from Doherty Funeral Home.

16.     Doherty Funeral Home seeks payment of $9,320.28 out of the proceeds of the policy.

17.     Defendants, Heather Rooks and Judith Rooks, and Doherty Funeral Homes, Inc. present rival and conflicting claims and are unable to resolve their conflicting claims for the benefits of the Policy between themselves.

18.     By reason of the conflicting claims, Thrivent is unable to determine the rights of each of the claimants and is in great doubt as to which claimant is entitled to be paid the benefits. As a result, Thrivent is exposed to conflicting claims and potential

Deleted: Redacted
Deleted: Redacted
Formatted: Bullets and Numbering
Deleted: ME1\5885339.1

multiple liability in the event it pays proceeds to the wrong party.

19.____Thrivent has no adequate measures or remedies to resolve the issues presented in this case.

20.____Thrivent claims no interest in the disputed benefits.

**WHEREFORE,** Thrivent respectfully requests:

(a)    This Court issue its process for all defendants;

(b)    Defendants be ordered to interplead and settle between themselves their rights and that, upon payment by the plaintiff of $50,000, plus accrued interest with the Court pursuant to Rule 67 of the Federal Rules of Civil Procedure and Rule 67.2 of the Local Civil Rules of this Court, plaintiff be discharged from all further liability with respect to the Policy arising from the death of Glenn, Sr.;

(c)    In the event that it is found that additional or other persons not yet named as parties to this action are or may be entitled to all or part of the death benefit payable under the Policy on account of the death of Glenn, Sr., this Court shall order such persons to be parties to this action and to respond to this Complaint in Interpleader;

(d)    Order that plaintiff be paid out of the funds remaining for distribution its costs, together with reasonable attorney's fees; and

(f)    Plaintiff has such further and additional relief as may be equitable and just.

McCARTER & ENGLISH, LLP

By:_____
         A. Richard Winchester (DE Bar ID #2641)
         919 North Market Street
         Suite 1800
         P.O. Box 111
         Wilmington, Delaware  19899
         (302) 984-6300
         Attorneys for Plaintiff,
         Thrivent Financial for Lutherans

OF COUNSEL

-4-

Deleted: MEI\5885339.1

MEI\5913726.1

Robert P. Lesko
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
(973) 622-4444

Dated:  October 10, 2006

-5-

Deleted: ME1\5885339.1

THRIVENT FINANCIAL FOR
LUTHERANS,

    Interpleader Plaintiff,

         v.

HEATHER L. ROOKS, JUDITH L. ROOKS
as Trustee for B.R. and E.R., and DOHERTY
FUNERAL HOMES, INC.

    Defendants.

: UNITED STATES DISTRICT COURT
: FOR THE DISTRICT OF DELAWARE
:
: C.A. No. 06-628
:
:
: **VERIFICATION OF FIRST AMENDED**
: **COMPLAINT**
:
:
:
:
:

I, Wayne R. Luck, by way of Verification, say:

1.    I hold the position of Senior Litigation Counsel for plaintiff, Thrivent Financial

for Lutherans. In that capacity, I am duly authorized to make this Verification on behalf of

Thrivent.

2.    I have read the allegations in the First Amended Verified Complaint, and they are

true based upon the information and documents available to me.

Dated: 10/25/06

MEI\5913771.1

# EXHIBIT A

Thrivent Financial
for Lutherans


*Thrivent Financial* for Lutherans·

20856A  N8-03

FOR INFORMATION ABOUT THIS CONTRACT,
CONSULT YOUR LUTHERAN BROTHERHOOD
DISTRICT REPRESENTATIVE OR WRITE TO
US AT OUR HOME OFFICE.

CONTRACT
SCHEDULE

LUTHERAN BROTHERHOOD
625 FOURTH AVE. SO.
MINNEAPOLIS, MINNESOTA  55415

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  | | PREMIUMS | |
|---|---|---|---|
|  | PERIOD PAYABLE* | PLANNED ANNUAL PREMIUM | |
| BASIC BENEFIT | | | |
| ADJUSTABLE LIFE INSURANCE | | | |
| MATURITY DATE    MARCH 4, 2046 | TO AGE 96 | $540.00 | |
| PREMIUM CLASS    SMOKER | | | |

COVERAGE MAY TERMINATE PRIOR TO MATURITY DATE IF PREMIUMS ARE DISCONTINUED
OR PREMIUMS PAID AND INTEREST CREDITED ARE NOT ENOUGH TO PROVIDE COVERAGE
TO THAT DATE.

* CONTRACT ANNIVERSARY BEYOND THE AGE SHOWN.

FOR DESCRIPTION OF ADDITIONAL BENEFITS SEE PAGE 3 CONTINUED.

DUPLICATE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEATH BENEFIT OPTION        B (SEE SECTION 5.1)
LOAN INTEREST RATE          7.4% PER YEAR PAYABLE IN ADVANCE
GUARANTEE PREMIUM           $42.96    PER MONTH
MINIMUM FACE AMOUNT         $50,000 THROUGH AGE 51*, THEN $25,000

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INSURED    ROOKS GLENN I SR              AGE    37    SEX    MALE

CONTRACT NUMBER    2306144              DATE OF ISSUE    MARCH 4, 1987

INITIAL FACE AMOUNT        $50,000


U2-FT-FPAL3-3                    PAGE 3

INSURED    ROOKS GLENN I SR                    AGE    37    SEX    MALE
CONTRACT NUMBER    2306144                      DATE OF ISSUE    MARCH 4, 1987
INITIAL FACE AMOUNT          $50,000            PLAN    ADJUSTABLE LIFE INSURANCE

### PAGE 3 CONTINUED CONTAINING DESCRIPTION OF ADDITIONAL BENEFITS

|  | EXPIRATION DATE | MONTHLY COST |
|---|---|---|
| ADDITIONAL BENEFITS | | |
| WAIVER OF MONTHLY DEDUCTION BENEFIT (FORM U2-WMDGP-1 A PA) | AGE 65* | SEE PAGE 5-WMDGP |

\* CONTRACT ANNIVERSARY BEYOND THE AGE SHOWN.

U-IF-ENDORSE.INCREASE PA ATTACHED

ENDORSEMENT (FORM U2-FPAL-ENDORSE.PENNSYLVANIA) ATTACHED.

U2-FT-FPAL3-3C                    PAGE 3 CONTINUED

```
INSURED   ROOKS GLENN I SR              AGE    37    SEX    MALE
CONTRACT NUMBER    2306144              DATE OF ISSUE    MARCH 4, 1987
INITIAL FACE AMOUNT          $50,000    PLAN    ADJUSTABLE LIFE INSURANCE
```

## CONTRACT CHARGES

```
ADMINISTRATIVE CHARGE       $2.25 PER MONTH
PERCENT OF PREMIUM CHARGE   5% OF EACH PREMIUM
PREMIUM PAYMENT CHARGE      AUTOMATIC PAYMENTS  -  $  .50 PER PAYMENT
                            ALL OTHER PAYMENTS  -  $ 1.00 PER PAYMENT
INITIAL MONTHLY CHARGE      $0.07 PER $1,000 OF FACE AMOUNT, CHARGED ONLY
                               IN FIRST 120 MONTHLY DEDUCTIONS
INITIAL INCREASE CHARGE     $25.00
SURRENDER CHARGE            $25.00 - DEDUCTED FROM PARTIAL SURRENDERS ONLY
```

### DECREASE CHARGE**

| CONTRACT YEAR | DECREASE CHARGE | CONTRACT YEAR | DECREASE CHARGE |
|---|---|---|---|
| 1 | $8.88 | 7 | $3.55 |
| 2 | $7.99 | 8 | $2.66 |
| 3 | $7.10 | 9 | $1.78 |
| 4 | $6.22 | 10 | $0.89 |
| 5 | $5.33 | THEREAFTER | $0.00 |
| 6 | $4.44 | | |

** CHARGE PER $1,000 OF DECREASE IN INITIAL FACE AMOUNT IF A DECREASE IS
   APPLIED TO THIS AMOUNT (SEE SECTION 5.4).

INSURED    ROOKS GLENN I SR
CONTRACT NUMBER    2306144
INITIAL FACE AMOUNT          $50,000

AGE    37    SEX    MALE
DATE OF ISSUE    MARCH 4, 1987
PLAN    ADJUSTABLE LIFE INSURANCE

| ATTAINED AGE | COST OF INSURANCE RATE* | MONTHLY INCREASE CHARGE# | ATTAINED AGE | COST OF INSURANCE RATE* | MONTHLY INCREASE CHARGE# |
|---|---|---|---|---|---|
| 37 | $0.26 | $0.07 | 67 | $3.72 | $0.00 |
| 38 | $0.28 | $0.08 | 68 | $4.03 | $0.00 |
| 39 | $0.31 | $0.08 | 69 | $4.36 | $0.00 |
| 40 | $0.34 | $0.08 | 70 | $4.72 | $0.00 |
| 41 | $0.37 | $0.09 | 71 | $5.13 | $0.00 |
| 42 | $0.41 | $0.09 | 72 | $5.59 | $0.00 |
| 43 | $0.45 | $0.10 | 73 | $6.11 | $0.00 |
| 44 | $0.49 | $0.10 | 74 | $6.67 | $0.00 |
| 45 | $0.54 | $0.11 | 75 | $7.27 | $0.00 |
| 46 | $0.59 | $0.11 | 76 | $7.88 | $0.00 |
| 47 | $0.64 | $0.11 | 77 | $8.50 | $0.00 |
| 48 | $0.70 | $0.11 | 78 | $9.12 | $0.00 |
| 49 | $0.76 | $0.11 | 79 | $9.77 | $0.00 |
| 50 | $0.83 | $0.11 | 80 | $10.47 | $0.00 |
| 51 | $0.91 | $0.12 | 81 | $11.24 | |
| 52 | $0.99 | $0.12 | 82 | $12.10 | |
| 53 | $1.09 | $0.12 | 83 | $13.02 | |
| 54 | $1.20 | $0.13 | 84 | $13.98 | |
| 55 | $1.32 | $0.14 | 85 | $14.95 | |
| 56 | $1.44 | $0.14 | 86 | $15.90 | |
| 57 | $1.57 | $0.13 | 87 | $16.87 | |
| 58 | $1.70 | $0.12 | 88 | $17.89 | |
| 59 | $1.85 | $0.12 | 89 | $18.90 | |
| 60 | $2.01 | $0.11 | 90 | $19.92 | |
| 61 | $2.20 | $0.10 | 91 | $20.98 | |
| 62 | $2.40 | $0.09 | 92 | $22.21 | |
| 63 | $2.63 | $0.06 | 93 | $23.78 | |
| 64 | $2.89 | $0.03 | 94 | $25.93 | |
| 65 | $3.15 | $0.00 | 95 | $29.32 | |
| 66 | $3.43 | $0.00 | | | |

* MAXIMUM MONTHLY COST PER $1,000 INSURANCE FOR SMOKER PREMIUM CLASS, BASED ON COMMISSIONERS 1980 STANDARD ORDINARY MORTALITY TABLE FOR SMOKERS.  WE USE AN INTEREST RATE OF 4.0%.

# MONTHLY CHARGE PER $1,000 OF INCREASE IN FACE AMOUNT UNDER SECTION 5.3 OR UNDER ANY GUARANTEED INCREASE OPTION BENEFIT RIDER, CHARGED ONLY IN THE FIRST 120 MONTHLY DEDUCTIONS ON OR AFTER THE EFFECTIVE DATE OF THE INCREASE.

U2-FT-FPAL3-5                    PAGE 5

INSURED    ROOKS GLENN I SR                    AGE    37    SEX    MALE
CONTRACT NUMBER    2306144                     DATE OF ISSUE    MARCH 4, 1987
WAIVER OF MONTHLY DEDUCTION BENEFIT            PLAN    ADJUSTABLE LIFE INSURANCE

## TABLE OF MONTHLY COSTS

| ATTAINED AGE* | MONTHLY COST# | ATTAINED AGE* | MONTHLY COST# |
|---|---|---|---|
| 37 | 7.00 % | 51 | 12.00 % |
| 38 | 7.00 % | 52 | 14.00 % |
| 39 | 7.00 % | 53 | 16.00 % |
| 40 | 8.00 % | 54 | 18.00 % |
| 41 | 8.00 % | 55 | 20.00 % |
| 42 | 8.00 % | 56 | 22.00 % |
| 43 | 9.00 % | 57 | 25.00 % |
| 44 | 9.00 % | 58 | 27.00 % |
| 45 | 10.00 % | 59 | 30.00 % |
| 46 | 10.00 % | 60 | 7.00 % |
| 47 | 10.00 % | 61 | 6.00 % |
| 48 | 10.00 % | 62 | 5.00 % |
| 49 | 10.00 % | 63 | 5.00 % |
| 50 | 11.00 % | 64 | 5.00 % |

* AGE LAST BIRTHDAY ON CONTRACT ANNIVERSARY ON OR IMMEDIATELY PRIOR
  TO MONTHLY ANNIVERSARY.

# PERCENTAGE OF THE SUM OF THE MONTHLY COST OF INSURANCE, THE
  MONTHLY ADMINISTRATIVE CHARGE, ANY INITIAL MONTHLY CHARGE, ANY
  MONTHLY INCREASE CHARGE AND THE MONTHLY COST OF ANY OTHER
  ADDITIONAL BENEFITS.

## 1. DEFINITIONS.

**Application.** The application(s) and all amendments and supplements.

**Attained Age.** Attained Age on any day is the age last birthday of the Insured on the Contract Anniversary on or immediately prior to that day.

**Contract Anniversary.** The Date of Issue on page 3 and the same month and day for years after issue as in the Date of Issue.

**Contract Year.** The first Contract Year begins on the Date of Issue and continues until the end of the period for which the 12th Monthly Deduction is made. Thereafter, Contract Years are successive periods during which 12 Monthly Deductions are made, each year beginning at the end of the prior Contract Year and continuing to the end of the period for which the 12th Monthly Deduction is made.

**Debt.** All unpaid contract loans less any unearned interest.

**Insured.** The person named as Insured on page 3.

**Monthly Anniversary.** The same day for months after issue as in the Date of Issue.

**We, Our, Us, Society.** Lutheran Brotherhood.

**Written Notice.** A written request signed by you and received by us at our Home Office in Minneapolis, Minnesota.

**You, Your, Yours.** The owner of this contract.

## 2. GENERAL PROVISIONS

**2.1 ENTIRE CONTRACT.** The Entire Contract consists of:

1) This contract including any attached riders or amendments;

2) The Application attached to this contract; and

3) The Articles of Incorporation and Bylaws of the Society and all amendments to them. Benefits will not be reduced by any future amendments to our Articles of Incorporation or Bylaws.

**2.2 CHANGE OF CONTRACT.** This contract may be changed to another plan of insurance if you agree to our rules and any required payments. No change in this contract is valid unless it is made in writing and signed by our President and Secretary.

**2.3 STATEMENTS IN THE APPLICATION.** We will not use any statement to contest a claim or to have this contract declared invalid unless the statement is contained in the Application. All statements made in the Application are representations, not warranties.

Contract Number:    2306144

## 2. GENERAL PROVISIONS                                    (continued)

**2.4 DEATH PROCEEDS.** The amount payable on the Insured's death before the Maturity Date will be the sum, on the date of death, of:

1) The Death Benefit (see Section 5.1); and

2) Any insurance on the Insured's life provided by Additional Benefits in this contract;

Less the sum of:

3) Any Debt; and

4) The amount, if any, needed to cover Monthly Deductions through the month of death.

**2.5 MATURITY PROCEEDS.** The amount payable if the Insured is living on the Maturity Date will be the Surrender Value.

**2.6 INCONTESTABILITY.** We will not contest the validity of this contract after it has been in force during the Insured's lifetime for two years from the Date of Issue except for any provisions granting benefits in the event of total disability.

If the Face Amount is increased according to Section 5.3 after the Date of Issue, this provision will apply to the increase from its effective date with regard to statements made in the application for increased insurance. This provision will apply from the date this contract is reinstated with regard to statements made in the application for reinstatement.

**2.7 MISSTATEMENT OF AGE OR SEX.** If Death Proceeds are payable and the Insured's age or sex has been misstated, the amount payable will be adjusted based on the correct age and sex, the most recent Cost of Insurance Rates and the interest rates that were credited to the Cash Value. The adjusted amount will not be less than the Cash Value based on the misstated age and sex, and no such adjustment will cause this contract to terminate prior to the date of death.

If this contract is in force and the Insured's age or sex has been misstated, the Cash Value will be adjusted based on the correct age and sex, the most recent Cost of Insurance Rates and the interest rates that were credited to the Cash Value.

**2.8 EXCLUSION: SUICIDE.** If the Insured dies by suicide, while sane or insane, within two years after the Date of Issue, the Death Proceeds of this contract are limited to the premiums paid less the sum of:

1) Any Debt; and

2) Any Partial Surrenders.

If the Insured dies by suicide, while sane or insane, within two years from the effective date of an increase in Face Amount according to Section 5.3, the Death Proceeds with respect to the increase are limited to the Cost of Insurance for the increase (see Section 6.4) plus the Increase Charges included in any Monthly Deduction(s) made.

U2-FT-FPAL3-7 PA                          page 7

Contract Number:    2306144

## 2. GENERAL PROVISIONS                                    (continued)

**2.9 MAINTENANCE OF SOLVENCY.** The bene-
fits provided by this contract will not
change. If the solvency of the Society
becomes impaired, you may be required to
make an extra payment. The Board of
Directors will determine the amount of
any extra payment. It will be based on
each member's fair share of the defi-
ciency. The amount will be charged as a
loan against the contract with interest
compounded at the rate of 5% per year.

You may prefer to make the extra payment
by an equivalent reduction in benefits
or by a payment in cash. You may do this
within 60 days from the date we notify
you of your share of the deficiency.

**2.10 DEFERMENT.** Except when used to pay
premiums due on contracts with us, we
may defer for not more than 60 days:

1) A loan;

2) Payment of a Partial Surrender; or

3) Payment of the Surrender Value.

**2.11 ANNUAL REPORT.** We will give you a
statement of the value of this contract
at least once a year until maturity.
The report will show the Cash Value,
Surrender Value, all payments and
deductions since the last report and any
outstanding Debt.

**2.12 PROJECTION OF VALUES.** In any year
that you so request, we will give you
one projection of illustrated future
values under this contract.

**2.13 EXEMPTIONS FROM CLAIMS OF CREDITORS.**
To the extent permitted by law, the pro-
ceeds of this contract and any payments
under it will not be subject to the
claims of creditors or to any legal pro-
ceedings.

**2.14 TERMINATION.** This contract will
terminate on the earliest of:

1) The date of death of the Insured;

2) The Maturity Date;

3) The end of the grace period if the
   premium required to keep this con-
   tract in force has not been paid;

4) The date you surrender this con-
   tract; and

5) The date this contract terminates
   under Section 8.4.

**2.15 MATURITY DATE.** The Maturity Date
is shown on page 3. If this contract
remains in force until the Maturity
Date, it will terminate on that date and
Maturity Proceeds (see Section 2.5) will
be paid. No premiums may be paid on or
after the Maturity Date. Death Proceeds
(see Section 2.4) are payable if the
Insured dies before the Maturity Date
and while this contract is in force.

**2.16 RIGHT TO MAINTAIN INSURANCE.**
Expulsion or suspension of the member
covered under this contract will not be
used as a reason to terminate this con-
tract except, within the contestable
period, for material misrepresentation
in the member's application for member-
ship.

Contract Number:    2306144

## 3. MEMBERSHIP AND OWNERSHIP

3.1 MEMBERSHIP.  The Insured is an adult member of the Society upon reaching age 16. Rights and privileges of membership are set forth in the Bylaws of the Society or in the Application. These rights and privileges are separate from the ownership of this contract.

3.2 OWNERSHIP.  The Insured is the owner unless another person is named as the owner in the Application. Ownership may be changed through assignment. While the Insured is living, the owner may exercise all rights set out in this contract. The owner has no membership rights unless the owner is the Insured.

3.3 ASSIGNMENT.  You may assign this contract.  We are not bound by the assignment unless it is in writing and filed at our Home Office. We are not responsible for the validity or effect of any assignment. Any Debt on this contract will have prior claim over any assignment. The Insured will keep all membership rights and privileges.

## 4. PREMIUMS AND REINSTATEMENT

4.1 PREMIUM PAYMENTS.  The amount of the Planned Annual Premium is shown on page 3.  The initial premium is due and payable on the Date of Issue.

You may pay more or less than the Planned Annual Premium in any Contract Year.  However, except as provided in Section 4.6, to continue the contract in force on each Monthly Anniversary the Surrender Value must be sufficient to cover the Monthly Deduction.  Premiums may be paid at any time and in any amount.

Premiums are payable at our Home Office. Upon request we will give you a receipt, signed by an officer of the Society, for the premium paid.

4.2 NET PREMIUM.  The Net Premium is the portion of each premium payment that is applied to increase the Cash Value.  The Net Premium is equal to the premium paid less the sum of:

1)    The Percent of Premium Charge applied to the premium paid; and

2)    The Premium Payment Charge.

The Percent of Premium Charge and the Premium Payment Charge are shown on page 4.

4.3 CUMULATIVE PREMIUM LIMIT.  The Internal Revenue Code provides for exclusion of the Death Benefit from gross income.  To qualify for the exclusion, total premium payments must not exceed the limit stated in the Code. The portion of any premiums paid in excess of that limit will be refunded to you, with interest.

Contract Number:    2306144

## 4. PREMIUMS AND REINSTATEMENT                              (continued)

**4.4 PREMIUM BILLING.** We will send pre-mium billings based on the amount and frequency of premium payments which you request. You may change the amount and, subject to our published rules, the fre-quency or method of billing by giving Written Notice. If we do not receive any premium payments for 24 consecutive months, we will stop billings.

**4.5 PREMIUM IN DEFAULT AND GRACE PERIOD.** Except as provided in Section 4.6, a premium is in default on a Monthly Anni-versary if the Surrender Value is less than the Monthly Deduction to be made on that day. You will have a grace period of 61 days after the date of default in which to pay the premium required to keep this contract in force. At least 31 days before this contract may termi-nate, notice of the required premium will be mailed to you at the address last known to us. This contract will remain in force during the grace period, but not beyond the Maturity Date. If the required premium is not paid within the grace period, this contract will terminate without value at the end of the grace period.

**4.6 GUARANTEE PREMIUM AND GUARANTEE PERIOD.** During any Guarantee Period, no premium will be in default under Section 4.5 on any Monthly Anniversary that (1) is greater than or equal to (2) where:

1) Is the sum, for that Guarantee Period, of:

   a) Premiums paid; less

   b) Any Partial Surrenders; and less

   c) Any increases in Debt.

2) Is the sum of the Guarantee Premi-ums for each Monthly Anniversary in the Guarantee Period that a Monthly Deduction was made.

A Guarantee Period of two Contract Years begins on the Date of Issue. A new Guarantee Period of two Contract Years begins on the effective date of any increase in the Guarantee Premium.

The Guarantee Premium on the Date of Issue is shown on page 3. A new Guaran-tee Premium will be determined whenever:

1) The Face Amount is increased or decreased;

2) The Premium Class is changed; or

3) Additional Benefits which provide coverage on persons other than the Insured are increased, decreased, or added to or deleted from this contract.

**4.7 REINSTATEMENT.** This contract may be reinstated before the Maturity Date and within five years after the end of the grace period, unless it has been surren-dered. To reinstate we require:

1) Evidence of insurability which meets our standards;

2) Payment to cover the Monthly Deductions that were not made dur-ing the grace period;

3) Payment of premium sufficient to keep this contract in force for at least two months; and

4) Payment or reinstatement of all Debt existing at the end of the grace period.

The effective date of a reinstatement is the Monthly Anniversary on or next after the date the application for rein-statement is approved by us. Section 2.6 Incontestability will apply from the date the contract is reinstated with regard to statements made in the appli-cation for reinstatement.

Contract Number:    2306144

## 5. INSURANCE COVERAGE

5.1 DEATH BENEFIT. We will pay the
Death Benefit to the beneficiary upon
receiving proof that the death of the
insured occurred before the Maturity
Date. It is payable as part of the
Death Proceeds. The benefit is deter-
mined as follows:

1) <u>Option A.</u> The Death Benefit on
any day is the greater of:

    a) The sum of the Face Amount and
the Cash Value; and

    b) The Cash Value multiplied by
the Factor for the Attained
Age on that day (see Table of
Factors).

2) <u>Option B.</u> The Death Benefit on
any day is the greater of:

    a) The Face Amount; and

    b) The Cash Value multiplied by
the Factor for the Attained
Age on that day (see Table of
Factors).

The Death Benefit Option at issue of
this contract is shown on page 3.

### TABLE OF FACTORS

| Attained Age | Factor | Attained Age | Factor |
|---|---|---|---|
| 40 or less | 2.50 | 61 | 1.28 |
| 41 | 2.43 | 62 | 1.26 |
| 42 | 2.36 | 63 | 1.24 |
| 43 | 2.29 | 64 | 1.22 |
| 44 | 2.22 | 65 | 1.20 |
| 45 | 2.15 | 66 | 1.19 |
| 46 | 2.09 | 67 | 1.18 |
| 47 | 2.03 | 68 | 1.17 |
| 48 | 1.97 | 69 | 1.16 |
| 49 | 1.91 | 70 | 1.15 |
| 50 | 1.85 | 71 | 1.13 |
| 51 | 1.78 | 72 | 1.11 |
| 52 | 1.71 | 73 | 1.09 |
| 53 | 1.64 | 74 | 1.07 |
| 54 | 1.57 | 75 to 90 | 1.05 |
| 55 | 1.50 | 91 | 1.04 |
| 56 | 1.46 | 92 | 1.03 |
| 57 | 1.42 | 93 | 1.02 |
| 58 | 1.38 | 94 | 1.01 |
| 59 | 1.34 | 95 | 1.00 |
| 60 | 1.30 | | |

---

**5. INSURANCE COVERAGE**                                    *(continued)*

---

**5.2 CHANGE IN DEATH BENEFIT OPTION.** You may change the Death Benefit Option at any time except when the Death Benefit is a multiple of the Cash Value according to Section 5.1(1)(b) or 5.1(2)(b). The change is subject to the following:

1)  You must give Written Notice;

2)  If you change from Option B to Option A, the Death Benefit will not change and the Face Amount will be decreased by the Cash Value on the effective date of the change. The decrease in Face Amount will be applied in the order specified in Section 5.4(2). However, this change may not be made if it would reduce the Face Amount below the Minimum Face Amount shown on page 3;

3)  If you change from Option A to Option B, the Face Amount will not change and the Death Benefit will be decreased by the Cash Value on the effective date of the change;

4)  The change may not be made if it would cause total premium payments already made to exceed the Cumulative Premium Limit of the Internal Revenue Code; and

5)  The effective date of the change will be the Monthly Anniversary on or next after the date we receive Written Notice.

**5.3 INCREASE IN FACE AMOUNT.** You may increase the Face Amount any time after the first Contract Year and before the Contract Anniversary on or next after the Insured's 75th birthday. The increase is subject to the following:

1)  You must make written application to us at our Home Office;

2)  We will require evidence of insurability which meets our standards;

3)  The increase must be at least $10,000;

4)  The Surrender Value must not be less than the Monthly Deduction on the effective date of the increase;

5)  The Increase Charge (see Section 6.5) will apply to the increase in face amount;

6)  A new schedule of Decrease Charges will apply to the increase in Face Amount;

7)  The effective date of the increase will be the date shown on the supplemental contract schedule that we will mail to you.

Section 2.6 Incontestability will apply to the increase from its effective date with regard to statements made in the application for the increase in Face Amount. Section 2.8 Exclusion: Suicide will apply to the increase from its effective date.

Contract Number:    2306144

## 5. INSURANCE COVERAGE                                              (continued)

5.4 DECREASE IN FACE AMOUNT.  You may
decrease the Face Amount at any time.
The decrease is subject to the follow-
ing:

1)  You must give Written Notice;

2)  The decrease and Decrease Charge
    (see Section 6.6) will be applied,
    in successive order, against:

    a)  The most recent increase in
        Face Amount;

    b)  The next most recent
        increase(s); then

    c)  The Initial Face Amount;

3)  The Face Amount after the decrease
    must not be less than the Minimum
    Face Amount shown on page 3;

4)  The decrease may not be made if it
    would cause total premium payments
    already made to exceed the Cumula-
    tive Premium Limit of the Internal
    Revenue Code; and

5)  The effective date of the decrease
    will be the Monthly Anniversary on
    or next after the date we receive
    Written Notice.

5.5 CONTINUATION OF INSURANCE COVERAGE.
If you stop premium payments, this con-
tract will remain in force until the
earliest of:

1)  The date of death of the Insured;

2)  The Maturity Date;

3)  The end of the grace period if the
    premium required to keep this con-
    tract in force has not been paid;

4)  The date you surrender this con-
    tract; and

5)  The date this contract terminates
    under Section 8.4.

## 6. CASH VALUE AND MONTHLY DEDUCTION

6.1 CASH VALUES.  On the Date of Issue,
the Cash Value is the initial Net Premi-
um less the Monthly Deduction.  On any
other Monthly Anniversary, the Cash Val-
ue is the sum of:

1)  The Cash Value on the prior Month-
    ly Anniversary;

2)  Net Premiums received since the
    prior Monthly Anniversary; and

3)  Interest credited;

Less

4)  The Monthly Deduction on that
    date; and

5)  Any Partial Surrender made on that
    day.  (Any surrenders will be
    applied before the Monthly
    Deduction is made.)

At any other time, the Cash Value is the
sum of the Cash Value on the prior
Monthly Anniversary and Net Premiums
received since the prior Monthly Anni-
versary.

U2-FT-FPAL3-13                    page 13

Contract Number:    2306144

## 6. CASH VALUE AND MONTHLY DEDUCTION                    (continued)

6.2 INTEREST. Interest is credited on each Monthly Anniversary after the Date of Issue. The Cash Value on the prior Monthly Anniversary earns interest from that anniversary. Net Premiums received since the prior Monthly Anniversary earn interest from their date of receipt. We guarantee that the interest rate credited will not be less than .32737% per month, compounded monthly. This is an effective rate of 4.0% per year. We may credit interest in excess of this rate. However, if you make a loan on this contract, excess interest may be reduced on the portion of the Cash Value equal to the Debt.

6.3 MONTHLY DEDUCTION. The Monthly Deduction made on the Date of Issue and each Monthly Anniversary is the sum of:

1) The Cost of Insurance (see Section 6.4);

2) The Administrative Charge shown on page 4;

3) Any Initial Monthly Charge. This is a charge per $1,000 of Initial Face Amount. However, if the Initial Face Amount is decreased according to Section 5.4, the charge will be based on the Face Amount remaining after the decrease. The charge is made on the Date of Issue and then on each Monthly Anniversary until a total of 120 charges have been made. The charge per $1,000 is shown on page 4;

4) Any Increase Charge (see Section 6.5);

5) Any Decrease Charge according to Section 6.6(1); and

6) The monthly cost of any Additional Benefits.

6.4 COST OF INSURANCE. The Cost of Insurance is determined on each Monthly Anniversary. It is equal to the Cost of Insurance Rate multiplied by the Risk Amount.

6.4a Cost of Insurance Rate. We will determine the Cost of Insurance Rate monthly. The rate is based on the Insured's Premium Class, sex, Issue Age, Initial Face Amount and Attained Age.

The Premium Class for the Initial Face Amount is shown on page 3. The Premium Class for any increase in Face Amount according to Section 5.3 will be determined on the effective date of the increase. If the Death Benefit is a multiple of the Cash Value according to Section 5.1(1)(b) or 5.1(2)(b), the Premium Class of the resulting increase in Death Benefit will be the Premium Class shown on page 3. The Cost of Insurance Rate for the Initial Face Amount and for any increase in Face Amount with the same Premium Class as shown on page 3 will not exceed the rates shown on page 5. For any Face Amount with Premium Class other than "smoker" or "nonsmoker," the maximum cost is increased in one or both of the following ways, as specified in the contract schedule pages:

1) The maximum Cost of Insurance Rate is multiplied by a percentage rating.

2) An extra monthly premium is added to the Cost of Insurance.

We may charge less than the maximum rate. Any change in Cost of Insurance Rates will apply to all insureds of the same Premium Class, sex, Issue Age, Initial Face Amount and Attained Age.

Contract Number:    2306144

## 6. CASH VALUE AND MONTHLY DEDUCTION    (continued)

6.4b Risk Amount. The Risk Amount is equal to:

1)  The Death Benefit divided by 1.0032737;

Less

2)  The Cash Value (before the Cost of Insurance is deducted).

If the Death Benefit Option is B and the Initial Face Amount has been increased, the Cash Value will be considered part of the Initial Face Amount. If the Cash Value is greater than the Initial Face Amount, the excess will be considered to be part of successive increases in Face Amount starting with the first increase.

6.5 INCREASE CHARGE. The Increase Charge applies to any increase in Face Amount under Section 5.3 or under any Guaranteed Increase Option Rider. The Increase Charge is the sum of two charges:

1)  The Initial Increase Charge. This is a fixed charge made on the effective date of the increase. The amount of this charge is shown on page 4.

2)  The Monthly Increase Charge. This is a charge per $1,000 of increase in Face Amount. However, if the increased Face Amount is later decreased according to Section 5.4, the charge will be based on the amount of the increase remaining in force after the decrease. The charge is made on the effective date of the increase and then on each Monthly Anniversary until 120 charges have been made. The charge is based on Attained Age on the date of the increase. The charge per $1,000 is shown on page 5.

6.6 DECREASE CHARGE. The Decrease Charge is a charge per $1,000 of decrease in Face Amount. The Decrease Charge is charged on:

1)  The effective date of each decrease you make according to Section 5.4; and

2)  Termination of this contract other than by death or maturity.

The Decrease Charge that applies to the Initial Face Amount is shown on page 4. Decrease Charges that apply to an increase in Face Amount, if any, will be shown on the supplemental schedule page that we will mail to you. The Decrease Charge is applied as in Section 5.4(2).

6.7 BASIS OF COMPUTATIONS. Minimum cash values and reserves are based on the Commissioners 1980 Standard Ordinary Mortality Table(s) as described on page 5. We use an interest rate of 4.0% per year. Age used is age last birthday. A detailed statement of the method of computing cash values has been filed with the insurance supervisory officials of the state in which this contract is delivered. Values are not less than the minimum values required by law.

Contract Number:     2306144

---

## 7. SURRENDER PROVISIONS

**7.1 FULL SURRENDER.** You may surrender this contract for its Surrender Value by giving Written Notice before the Maturity Date and while the Insured is alive. The surrender will be effective on the date the notice is signed and insurance coverage will cease on that day.

If surrender is effective on a Monthly Anniversary, the Surrender Value will be the Surrender Value on that day. Otherwise, the Surrender Value will not be less than the Surrender Value as of the next Monthly Anniversary. If we receive Written Notice to surrender this contract within 30 days after a Contract Anniversary, the Cash Value will not be less than the Cash Value on that Contract Anniversary less any Partial Surrenders made on or after that day.

**7.2 SURRENDER VALUE.** The Surrender Value on any date is the Cash Value less the sum of:

1) Any Debt; and

2) The Decrease Charges applied to the Face Amount and to any prior decreases in Face Amount due to Partial Surrender or change of Death Benefit Option.

**7.3 PARTIAL SURRENDER.** You may surrender a portion of the Cash Value by giving Written Notice before the Maturity Date and while the Insured is alive. We will deduct a Surrender Charge from every Partial Surrender. The amount of this charge is shown on page 4.

A Partial Surrender:

1) Will reduce the Cash Value by the amount of the Partial Surrender;

2) Must not reduce the remaining Surrender Value to less than $500;

3) If the Death Benefit Option is B, will affect the Face Amount as follows:

   a) If the Death Benefit on the effective date of the Partial Surrender is equal to the Face Amount, then the surrender will reduce the Face Amount by the amount of the Partial Surrender.

   b) If the Death Benefit on the effective date of the Partial Surrender is a multiple of the Cash Value according to Section 5.1(2)(b), then the Face Amount will be reduced only if, on that day, the amount of the surrender multiplied by the Factor for the Attained Age on that day (see Table of Factors on page 11) exceeds the Death Benefit minus the Face Amount. In that case, the Face Amount will be reduced by:

      i) The amount of the Partial Surrender; less

      ii) The Death Benefit less the Face Amount prior to the surrender, divided by the Factor applied.

   Any decrease in Face Amount will be applied in the order specified in Section 5.4(2). The Face Amount may not be reduced to less than the Minimum Face Amount shown on page 3; and

4) Will be made on the Monthly Anniversary on or next after the date we receive Written Notice.

We reserve the right to limit the number of Partial Surrenders made in any Contract Year.

---

U2-FT-FPAL3-16                     page 16

Contract Number:    2306144

## 8. LOANS

**8.1 CONTRACT LOANS.** You may obtain a loan from us with this contract as sole security if:

1) You give Written Notice; and

2) The loan with interest does not exceed the Surrender Value.

**8.2 LOAN INTEREST.** The loan interest rate is 7.4% per year. Interest on any loan will be charged at that rate. It is payable in advance computed to the next Contract Anniversary. If interest is not paid when due, it will be added to the loan and bear interest at the same rate. If death or full surrender occurs before the next Contract Anniversary, unearned interest will be added to the proceeds payable.

**8.3 REPAYMENT OF DEBT.** All or part of the Debt may be repaid at any time before the Maturity Date and while the Insured is alive. Each repayment must be at least $25. You must notify us if a payment to us is a repayment of Debt. Otherwise, it will be considered a premium payment. No charges are deducted from Debt repayments. Upon death, maturity or full surrender any Debt will be deducted from the proceeds.

**8.4 TERMINATION FROM EXCESS LOAN.** This contract will terminate when:

1) The Debt exceeds the Cash Value less the Decrease Charge applied to the Face Amount and to any decreases in Face Amount due to Partial Surrender or change of Death Benefit Option; and

2) Sixty-one days have elapsed since we mailed a notice to you at the address last known to us.

## 9. DIVIDENDS

**9.1 DIVIDENDS.** Each year we will determine our divisible surplus. This contract's share, if any, will be credited as a dividend on the Contract Anniversary. Since we do not expect this contract to contribute to divisible surplus, it is not expected that any dividends will be credited.

**9.2 DIVIDEND OPTIONS.** You may choose to use dividends credited prior to the Maturity Date under any option which follows:

**Cash.** Dividends are paid in cash.

**Paid-Up Additions.** Dividends are applied as payment of a Net Premium.

**9.3 AUTOMATIC DIVIDEND OPTION.** Dividends will be used under the Paid-Up Additions option unless a different option has been chosen in writing.

Contract Number:    2306144

## 10. BENEFICIARY

**10.1 BENEFICIARY.** The beneficiary is named in the Application. You may change the beneficiary by giving us Written Notice. The change will become effective if:

1) We receive Written Notice; and

2) We acknowledge the change.

The effective date of the change will be the date the notice was signed. We will not be liable for any payment made or action taken by us before we receive the notice.

**10.2 SUCCESSION OF BENEFICIARIES.** You may designate one or more beneficiaries to receive Death Proceeds. You will classify each beneficiary as primary or contingent. Upon the Insured's death we will pay the Death Proceeds to the primary beneficiaries who survive the Insured. If none survive, the proceeds will be paid to the surviving contingent beneficiaries. In the event no beneficiary survives the Insured, proceeds will be paid to the Insured's estate.

Other designations or successions of beneficiaries may be arranged with us.

**10.3 SHARE OF PROCEEDS.** Unless you specify otherwise, each beneficiary receiving proceeds will have an equal share in any Death Proceeds payable.

## 11. SETTLEMENT PROVISIONS

**11.1 PAYMENT OF PROCEEDS.** Proceeds from death, maturity or surrender are payable in a lump sum unless otherwise provided. On Death Proceeds, we will pay interest at the rate payable in Option 1 - Interest Income. Interest is payable from the date of death until the date of settlement. Instead of a lump sum, proceeds of $2,000 or more may be paid under any settlement option in Section 11.2 by means of a supplementary contract which we will issue.

**11.2 OPTIONAL PLANS OF SETTLEMENT.**

Option 1 - Interest Income. The proceeds may be left on deposit. We will pay interest at a rate of not less than 3% per year. These proceeds may be withdrawn upon request.

Option 2 - Income of a Fixed Amount. We will pay an income of a fixed amount at agreed upon intervals. This income is subject to these conditions:

1) Income per year must not be less than 6% of the proceeds.

2) Income is paid until the proceeds, with interest credited at the rate of 3 1/2% per year on the unpaid balance, are paid in full. This income may be increased by dividends.

Contract Number:    2306144

## 11. SETTLEMENT PROVISIONS                                    (continued)

Option 3 - Income For a Fixed Period.
We will pay an income for a fixed number
of years, not to exceed 30. The income
is determined from the table for this
option below. The income may be
increased by dividends.

Option 4 - Life Income with Guaranteed
Period. We will pay an income for the
lifetime of the payee. If the payee
dies during the guaranteed period, pay-
ments will be continued to the end of
that period. A period of 10 or 20 years
may be elected. The income is deter-
mined from the table for this option on
pages 21 and 22. The income may be
increased by dividends. After the first
payment is made, this option may not be
revoked or changed.

Option 5 - Other Options. The proceeds
may be paid under any other settlement
option agreeable to us.

11.3 ELECTION OF AN OPTION. You may
elect an option by Written Notice during
the Insured's lifetime. The option must
be elected before proceeds become paya-
ble. Assignees and third-party owners
may elect an option only with our con-
sent. Election of Option 4 may be made

only if the payee is a natural person
who is the Insured or a beneficiary.

If Death Proceeds are payable, the bene-
ficiary may elect a settlement option
within one year from the date of death
provided that:

1)  The manner of settlement has not
    been restricted before the
    Insured's death; and

2)  The Death Proceeds have not been
    paid.

Election of an option is subject to
these conditions:

1)  Payments must not be less than
    $25;

2)  Payments are made only at annual,
    semiannual, quarterly or monthly
    intervals; and

3)  The first payment, except under
    Option 1-Interest Income, is paya-
    ble as of the date the option
    becomes effective. Under Option
    1, interest is payable at the end
    of the first payment interval.

## OPTION 3

### Guaranteed Monthly Payments for Each $1,000 of Proceeds

| Years Payable | Monthly Payment | Years Payable | Monthly Payment | Years Payable | Monthly Payment | Years Payable | Monthly Payment | Years Payable | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 84.65 | 7 | 13.37 | 13 | 7.93 | 19 | 5.96 | 25 | 4.96 |
| 2 | 43.05 | 8 | 11.89 | 14 | 7.48 | 20 | 5.75 | 26 | 4.84 |
| 3 | 29.19 | 9 | 10.75 | 15 | 7.10 | 21 | 5.56 | 27 | 4.73 |
| 4 | 22.26 | 10 | 9.83 | 16 | 6.76 | 22 | 5.39 | 28 | 4.62 |
| 5 | 18.11 | 11 | 9.08 | 17 | 6.46 | 23 | 5.23 | 29 | 4.53 |
| 6 | 15.34 | 12 | 8.46 | 18 | 6.20 | 24 | 5.09 | 30 | 4.44 |

Annual, Semiannual or Quarterly payments are 11.813, 5.957 and 2.991 respectively, times the Monthly payments.

Contract Number:    2306144

# OPTION 4

### Male Payee - Monthly Life Income

| GUARANTEED MONTHLY LIFE INCOME FOR EACH $1,000 OF PROCEEDS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Age of Payee on Date of First Payment | Payments Guaranteed for 10 years | Payments Guaranteed for 20 years | Age of Payee on Date of First Payment | Payments Guaranteed for 10 years | Payments Guaranteed for 20 years | Age of Payee on Date of First Payment | Payments Guaranteed for 10 years | Payments Guaranteed for 20 years |
| 40 | 3.94 | 3.89 | 65 | 6.08 | 5.28 | 75 | 7.75 | 5.65 |
| 45 | 4.20 | 4.11 | 66 | 6.23 | 5.33 | 76 | 7.92 | 5.65 |
| 50 | 4.51 | 4.36 | 67 | 6.38 | 5.38 | 77 | 8.09 | 5.65 |
| 55 | 4.91 | 4.66 | 68 | 6.54 | 5.43 | 78 | 8.26 | 5.65 |
| | | | 69 | 6.71 | 5.48 | 79 | 8.42 | 5.65 |
| 60 | 5.42 | 4.97 | 70 | 6.87 | 5.52 | 80 | 8.57 | 5.65 |
| 61 | 5.54 | 5.04 | 71 | 7.05 | 5.55 | 85 | 9.20 | 5.65 |
| 62 | 5.67 | 5.10 | 72 | 7.22 | 5.59 | 90 | 9.59 | 5.65 |
| 63 | 5.80 | 5.16 | 73 | 7.40 | 5.62 | 95 | 9.73 | 5.65 |
| 64 | 5.94 | 5.22 | 74 | 7.57 | 5.64 | | | |

U2-FT-FPAL3-20 (83A)                    page 20

Contract Number:    2306144

# OPTION 4

### Female Payee - Monthly Life Income

| GUARANTEED MONTHLY LIFE INCOME FOR EACH $1,000 OF PROCEEDS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Age of Payee on Date of First Payment | Payments Guaranteed for 10 years | Payments Guaranteed for 20 years | Age of Payee on Date of First Payment | Payments Guaranteed for 10 years | Payments Guaranteed for 20 years | Age of Payee on Date of First Payment | Payments Guaranteed for 10 years | Payments Guaranteed for 20 years |
| 40 | 3.72 | 3.70 | 65 | 5.50 | 5.05 | 75 | 7.14 | 5.60 |
| 45 | 3.92 | 3.88 | 66 | 5.63 | 5.12 | 76 | 7.34 | 5.63 |
| 50 | 4.18 | 4.11 | 67 | 5.77 | 5.19 | 77 | 7.54 | 5.65 |
| 55 | 4.51 | 4.38 | 68 | 5.91 | 5.25 | 78 | 7.74 | 5.65 |
| | | | 69 | 6.07 | 5.32 | 79 | 7.94 | 5.65 |
| 60 | 4.93 | 4.70 | 70 | 6.23 | 5.37 | 80 | 8.13 | 5.65 |
| 61 | 5.03 | 4.77 | 71 | 6.40 | 5.43 | 85 | 8.97 | 5.65 |
| 62 | 5.14 | 4.84 | 72 | 6.58 | 5.48 | 90 | 9.48 | 5.65 |
| 63 | 5.25 | 4.91 | 73 | 6.76 | 5.52 | 95 | 9.73 | 5.65 |
| 64 | 5.37 | 4.98 | 74 | 6.95 | 5.57 | | | |

*RIDER*                                               Contract Number:    2306144

---

## *WAIVER OF MONTHLY DEDUCTION BENEFIT*

---

**1. CONSIDERATION.** We include this rider as part of this contract based on the Application signed by the applicant and the deduction of the monthly cost as stated on page 3.

**2. DATE OF ISSUE OF THIS RIDER.** Unless otherwise stated on page 3, the date of issue of this rider is the Date of Issue of this contract.

**3. THE BENEFIT.** Upon receiving proof that Total Disability has continued for six consecutive months, we will credit premiums to this contract on each Monthly Anniversary during the Benefit Period while Total Disability continues. The premium credited on each Monthly Anniversary will be equal to:

1) The Guarantee Premium on the date of disability if the Monthly Anniversary occurs during a Guarantee Period; otherwise

2) The amount which provides the Monthly Deduction for that Monthly Anniversary.

In addition, for each Monthly Anniversary that occurred during the Benefit Period but before we received proof of Total Disability, we will credit:

1) A premium equal to the Guarantee Premium on the date of disability

if the Monthly Anniversary occurred during a Guarantee Period; otherwise

2) A Net Premium equal to the Monthly Deduction on that Monthly Anniversary.

This amount will be credited on the day your claim for waiver of Monthly Deductions is approved by us.

The Benefit Period is defined below:

1) If Total Disability begins at or after Age 5, but before Age 60, the Benefit Period starts on the date Total Disability begins and continues to the Maturity Date.

2) If Total Disability begins at or after Age 60, but before Age 65, the Benefit Period starts on the date Total Disability begins and continues until the later of:

   a) Age 65 of the Insured; and

   b) The date two years after Total Disability begins.

**5. DEFINITION OF AGE.** For purposes of this rider, "Age 5", "Age 60" and "Age 65" mean the Contract Anniversary after the Insured's 5th, 60th, and 65th birthday, respectively.

Contract Number:    2306144

---

*WAIVER OF MONTHLY DEDUCTION BENEFIT*                              *(continued)*

---

6. DEFINITION OF TOTAL DISABILITY.
Total Disability is a disability of the Insured:

1) Which begins at or after Age 5, but before Age 65;

2) Which begins while both this contract and this rider are in force;

3) Which results from bodily injury or disease; and

4) Which completely prevents the Insured from engaging in an Occupation for gain or profit. During the first 24 months of disability, Occupation is the Insured's regular occupation when disability begins. After this, it is any occupation for which the Insured is or becomes qualified by reason of education, training or experience. However:

   a) If the Insured is a full-time student under age 18 when Total Disability begins, Occupation for gain or profit means attending school outside the home. This definition applies until the disabled Insured reaches age 18, or for 24 months if later.

   b) If the Insured is primarily a homemaker when Total Disability begins, Occupation for gain or profit means performing household duties.

7. PRESUMPTIVE TOTAL DISABILITY.  Total Disability is presumed upon the total and permanent loss at or after Age 5, but before Age 65, of:

1) Use of both hands or both feet; or

2) Use of one hand and one foot; or

3) Sight in both eyes.

This presumption will continue for 60 months from the date of loss. However, benefits are payable only as provided in Paragraph 3 The Benefit. After the 60 month period, Total Disability is no longer presumed.

8. RISKS NOT ASSUMED.  No premiums will be credited under this rider if the Total Disability results from:

1) Intentionally self-inflicted injury; or

2) Any act of war, declared or undeclared, or any act incident to war.

9. NOTICE AND PROOF OF CLAIM.  Written notice and proof of claim must be given to us at our Home Office while the Insured is living and Total Disability continues or as soon as reasonably possible.

10. PROOF OF CONTINUANCE OF TOTAL DISABILITY.  Proof of continuance of Total Disability, at your expense, will be required at reasonable intervals. If you do not give proof, no further premiums will be credited under this rider. After premiums have been credited for two full years, we will not require proof more than once a year. As part of any proof we may require the Insured, at our expense, to have an examination by a physician whom we will name.

U2-WMDGP-2 A PA

Contract Number:    2306144

---

*WAIVER OF MONTHLY DEDUCTION BENEFIT*                              *(continued)*

---

**11. BENEFITS AFTER PREMIUM IN DEFAULT.**
No premiums will be credited under this
rider until your claim for waiver of
Monthly Deductions is approved.

If a premium is in default, your claim
for waiver of Monthly Deductions will be
approved only if:

1)  Total Disability began before the
    end of the grace period of the
    first premium in default;

2)  Written notice of claim is given
    within one year from the end of
    the grace period of the first pre-
    mium in default, or as soon as
    reasonably possible; and

3)  All other conditions of this rider
    are met.

If Total Disability began during the
grace period of the first premium in
default, no claim will be considered
until the required premium is paid.

**12. CONTRACT BENEFITS NOT REDUCED.** Pre-
miums credited under this rider will not
reduce any other contract benefits.
Cash Values and all other benefits will
be the same as if the credited premiums
had been paid in cash.

**13. TERMINATION.** This rider will termi-
nate on the earliest of:

1)  The date the Insured reaches Age
    65;

2)  The date this contract terminates;
    and

3)  The date you give Written Notice
    to cancel this rider.

Signed for Lutheran Brotherhood

| President | *[signature]* |
| Secretary | *[signature]* |

U2-WMDGP-3 A PA

Thrivent Financial    5/11/2006 10:13 AM   PAGE    2/003    Fax Server

# BEST COPY AVAILABLE

### Beneficiary Designation -- Common

| | Thrivent ID |
| --- | --- |
| | 507066126 |

This beneficiary change is subject to the provisions
printed on 307B, page 2.

Contract no.(s) 2306144

Check one:  ☒ Base Insured/Annuitant    ☐ Child Rider (one designation applies for all children under a child rider)
            ☐ Term Life Insurance Rider  ☐ Second Insured/Annuitant (spouse rider, joint life/annuity contract)

Name of insured/annuitant/payee (print title, first, middle, last name and suffix, as applicable)
Glenn I Rooks SR

List full name, *relationship* and address for each beneficiary.

**Primary Beneficiary**
Heather L Rooks, daughter

**First Contingent Beneficiary**

### REDACTED

**Second Contingent Beneficiary**

Signature of owner/controller and date signed (mm/dd/yyyy)
*Glenn Rooks Sr*   5-15-06
Print name and code of financial representative

Signature of witness and date signed (mm/dd/yyyy)
*Ka Drobofelly*   5-15-06
Thrivent Financial approval

**To be read by present owner -- Consent of spouse.**
It is your responsibility to determine whether consent of
your spouse is needed based upon the community/marital
property laws in your state or other legal requirements.
If consent is needed and not obtained, this beneficiary
designation may be contested

Signature of spouse and date signed (mm/dd/yyyy)

This form may be used for Thrivent Life Insurance Company (Minneapolis, MN 55416), a wholly owned subsidiary
of Thrivent Financial for Lutherans.

Please print below:
Name of owner/controller
GLENN I ROOKS , SR.
Street or RR and box number
75 BALL FARM WAY WILMINGTON, DE
City                          State  ZIP code
                                      19808

**Thrivent Financial
for Lutherans®**
4321 N. Ballard Road, Appleton, WI 54919-0001
800-THRIVENT (800-847-4836) • www.thrivent.com

307B   R9-05                                   Page 1

# LUTHERAN BROTHERHOOD
A Fraternal Benefit Society • Minneapolis, MN 55415

**APPLICATION FOR INSURANCE OR ANNUITY**

PART 1

## COMPLETE THIS SECTION FOR ALL APPLICATIONS

1. Print full name of Proposed Insured Member

FIRST **Kooks** MIDDLE **Glenn J Sr** SOC SEC # REDACTED - **1627**

STREET ADDRESS (ENTER OTHER BILLING INSTRUCTIONS IN NO. 13)
**3804 N. Market St**

CITY **Wilmington**    STATE **De**    ZIP **19802**

2. a. BIRTHDATE REDACTED  b. AGE **49**  c. SEX **37**  d. BIRTH STATE **M**  e. MARITAL STATUS **De M**

DUES 3-7 AGES 15 & OVER

1. EMPLOYER **Phoenix Steel**
2. BUSINESS ADDRESS **Claymont De.**
3. OCCUPATION - DUTIES **Welder**
4. ADJ. GROSS INCOME **UNEARNED**
5. HOW LONG AT THIS OCCUPATION? **18 YEARS** MONTHS

8. Is each person to be insured (or Annuitant) an Adult or Juvenile Contract Member of L.B.? Yes ☐ No ☐ (If No, complete membership application)

9. Insurance in force on persons proposed for coverage. If none, state "None."

| NAME OF PERSON | COMPANY | LIFE AMOUNT | ACC. DEATH AMT. | DISABILITY INC. AMT./BEN. PER. | HOSPITAL ROOM/SURG. | MEDICARE SUPP. | MAJ. MED. DEDUCT. & MAX. |
|---|---|---|---|---|---|---|---|
| None | | | | | | | |

10. Do you intend replacement or change of or borrowing on any existing life, annuity, or health insurance because of this application for insurance? ☐ Yes ☒ No

If "Yes", complete Disclosure Statement if applicable.
If medical insurance being replaced, name person and date other coverage ends.

## II. COMPLETE THIS SECTION FOR FAMILY MEMBER(S) INCLUDED ON LIFE OR HEALTH COVERAGE

| FULL NAME | SEX | BIRTHDATE | AGE | HEIGHT | WEIGHT | RELATIONSHIP |
|---|---|---|---|---|---|---|
| SPOUSE | | | | | | |
| | | | | | | |
| | | | | | | |

## COMPLETE FOR LIFE, DISABILITY INCOME, MAJ. MED. AND FAMILY HOSP. AGES 16 AND OVER

12. Give details for "Yes" answers under number 13.
Has any person to be insured:

|  | Yes | No |
|---|---|---|
| a. Applied elsewhere, either currently or within the past 6 months, for Life or Health insurance? | ☐ | ☒ |
| b. Flown in the past 3 years, or have any intent to fly as a pilot, co-pilot, student pilot, or crew member? (If "Yes", complete an Aviation Supplement) | ☐ | ☒ |
| c. In the past 3 years been refused a drivers license, had a license suspended or had a moving violation or accident? If "Yes", drivers license No. | ☐ | ☒ |
| d. Participated in skydiving, skin or scuba diving, hang gliding, or vehicle racing or does any person intend to? | ☐ | ☒ |
| e. Smoked cigarettes within the past 12 months? | ☒ | ☐ |

13. Details and Instructions

14. Endorsements: (Home Office Use Only)
Acceptance of the contract shall ratify changes entered here by the Society)

Third Party Owner (Complete no. 23)

1

7/83

The Central Records Department certifies that this is a true copy of the original business records, reproduced in the regular course of business.

PART I (Continued)

## 15. COMPLETE FOR LIFE INSURANCE

a. Plan U.L III   b. Amt. 50,000   c. ☐ NS

d. UL Opt B   e. UL PAP 540 mo.

f. Additional Benefits
☒ Waiver
☐ ADB
☐ PD ☐ PDD   ☐ FIB–Units
☐ IBB/JIBB   ☐ OPFIB–Units
Spouse's
Name _____

g. Term Benefits
$ _____ Amount ART
$ _____ Amount _____ Yrs. _____ Plan
$ _____ Amount _____ Yrs. _____ Plan

## 16. COMPLETE FOR BENEFICIARY LIFE - ANNUITY

(Unless otherwise directed, proceeds will be paid equally to those living at the death of insured)

Primary                                Relationship

JUDITH L. ROOKS   WIFE

First Contingent

HEATHER L. ROOKS   DAUGHTER
GLENN I. ROOKS JR.   SON
Second Contingent

I include as part of my beneficiary:
CHECK ONLY ONE CLASS DESIGNATION
☐ 1st Contingent–My children born by my spouse
   named above or legally adopted by us.
☐ 2nd Contingent–My children born by my spouse
   named above or legally adopted by us.
☐ 1st Contingent–My brothers and sisters born by
   my parents named above or legally adopted by
   them.
☐ 2nd Contingent–My brothers and sisters born by
   my parents named above or legally adopted by
   them.
☒ Add Interest Income Settlement Option
☐ Add _____ Day Survival Provision
   ☐ Primary   ☐ Entire Benc'iary

## 22. BENEFICIARY LIFE INSURANCE - FIB

Unless otherwise requested:
a. Two Parent FIB- The beneficiary of:
   1. Insurance on insured's spouse will be the
      insured.
   2. Insurance on each insured child will be the
      insured and the insured's spouse named in
      this application, equally or to the survivor.
b. One Parent FIB- The beneficiary of:
   1. Insurance on the Insured is the same as
      stated under No. 16.

3198-2A PA

## 17. COMPLETE FOR DISABILITY INCOME INS.

a. Base _____
b. Amt. _____   e. ☐ BOE Amt. _____
c. Wait _____   f. ☐ _____
d. Occ. Class _____   g. ☐ _____

Additional Benefits
h. Rider _____   i. Rider _____
   Amt. _____      Amt. _____
   Wait _____      Wait _____
j. Rider _____   k. ☐ ADB Amt. _____
   Amt. _____      Benef. _____
   Wait _____      Relation _____
l. ☐ FPO   m. ☐COL   n. ☐ Lifetime Ext.
o. ☐ Hosp. Ben.   p. ☐ _____

## 18. COMPLETE FOR MEDICAL INSURANCE

a. ☐ Major Med. _____ Deduct _____ ☐ Mat. Rider
b. ☐ Temp Med. _____ Deduct ☐ 3mo. ☐ 6mo.
c. ☐ Medicare Suppl. _____ ☐ Part A Deduct.
d. ☐ Family Hospital Daily Benefit _____

## 19. COMPLETE FOR ANNUITY - ALSO NO.16

a. ☐ FPA-Q ☐ FPA-N ☐ SPDA-Q ☐ SPDA-N ☐ SPIA
b. Retire. Age _____ Guaranteed Period _____
c. Premium of $ _____   _____ Payable
   ☐ M ☐ Q ☐ SA ☐ A   ☐ Single
d. FPA SAP $ _____   Plan Type _____
e. Annual Income (HR10-TSA) $ _____
f. _____   g. _____

## 20. COMPLETE FOR LIFE - ANNUITY

a. Dividend Option   ☐ Cash   ☐ Reduce Prem.
   ☐ Accum. ☐ PUA ☐ One Yr. Term ☐ BBA ☐ MBA
b. Automatic Premium Loan (Life only) ☒ Yes ☐ No

## 21. OWNERSHIP - LIFE INS. AGES 0 - 15

Applicant to be Owner to insured's Age 16–
Before the insured's 16th birthday, the owner
of the contract will be the applicant. If the
applicant dies before the insured's 16th birthday,
the owner will be the surviving beneficiary or,
if none survive, a surviving parent or a legally
appointed guardian of the insured. Ownership
will pass to the insured on the insured's 16th
birthdate. (If third party ownership is desired,
complete No. 23.)

2. Insurance on each insured child will be the
   insured. If living, otherwise the estate of the
   insured child.

Amount of insurance per unit of FIB.
Spouse, if applying for two parent FIB; otherwise
Insured, if applying for one parent FIB . . $2,500
Children: Birth through 14th day . . . . . . . . $ 0
         15 days to age 6 mos . . . . . . . . $ 500
         Age 6 mos. to anniversary of date
         of issue following 16th birthday . . $1,000

2

The Central Records Department certifies that this is a true copy of the original business records, reproduced in the regular course of business.

NEW BUSINESS CONTROL

PART I (Continued)

## COMPLETE FOR MEDICARE SUPPLEMENT

25. Height ___ ft ___ in. Weight ___ lbs.

|  | Yes | No | Ques. No. | Details of "Yes" answers |
|---|---|---|---|---|
| 26. Have you, in the past 3 years: | | | | |
| a. Taken treatment or medication for any reason or are you now under a physician's care? | ☐ | ☐ | | |
| b. Been advised to have any diagnostic test, hospitalization or surgery which was not completed? | ☐ | ☐ | | |
| c. Been a patient in a hospital or other medical facility? | ☐ | ☐ | | |
| 27. In the past 6 years have you been treated for or had any indication of: | | | | |
| a. Heart attack, high blood pressure, or stroke? | ☐ | ☐ | | |
| b. Epilepsy, mental or nervous disorder? | ☐ | ☐ | | |
| c. Cancer or other tumor? | ☐ | ☐ | | |
| d. Diabetes, kidney, or liver disorder? | ☐ | ☐ | | |
| e. Eye or respiratory disorder? | ☐ | ☐ | | |

## COMPLETE FOR LIFE INSURANCE AGE 0 - 18 (NOT PIB/OPPIB)

28. Present Height _____ Weight _____

29. Birth Weight if under age 1) _____

30. Name/Address-child's personal physician:

31. Date/Reason last consulted:

32. Treatment given or medication prescribed:

|  | Yes | No |
|---|---|---|
| 33. Does child have, or in the past five years had, any physical, mental or nervous disorder or abnormality or attended a special school? | ☐ | ☐ |
| 34. In the past five years has child had or had medical advice to have any examination, X-ray EKG, heart study, blood test or other diagnostic test or ever had an operation? | ☐ | ☐ |
| 35. In the past five years, has child had any medical care, consulted a physician or been hospitalized for any illness, disease or injury or for any reason not already noted? | ☐ | ☐ |
| 36. Is child taking treatment or medicine? | ☐ | ☐ |

### Details of "Yes" answers

Ques. no. _____

Parent Signature (Only if parent not applicant) _____ Date _____

## COMPLETE FOR ALL APPLICATIONS

37. Premiums will be paid. ☐ A ☐ SA ☐ Q ☐ M ☑ Single
    ☐ New PAC  ☐ Existing PAC #

38. Payment with the application $ 540.00  ☐ None
    Life $ 540.00  Dis. Inc. $ ___  Medical Exp. $ ___  Family Hosp. $ ___  Annuity $ ___

39. I have read the statements and answers recorded on this Part I of my application. They are given to obtain this insurance and are, to the best of my knowledge and belief, true and complete and correctly recorded. I agree that they will become part of this application and any contract issued. I also agree that:

   a. Except as provided in the Conditional Life or Health Insurance Agreement, issued if the full first premium is paid in advance, no insurance will take effect unless and until:
      1. A contract of insurance is issued and delivered;
      2. The full first premium is paid; and
      3. The health or all Proposed Insureds remains as stated in Part I and Part II of the application.
   b. No District Representative has the authority to waive any question contained in the application or to modify the application in any way.
   c. Changes in amount, plan, benefits, classification or issue age must be agreed to in writing by me.

Date: 2/18/87

Signed at Slatington PA, 19021

D.R. Signature _____ No. _____

Proposed Insured/Annuitant Signature

Spouse Signature (if coverage applied for)

Adult Applicant's Signature (if other than Proposed Insured)

31984A PA                                                                 4                                          7/83

**LUTHERAN BROTHERHOOD**
A Legal Reserve Life Insurance • Minneapolis, MN 55415

**APPLICATION FOR LIMITED MEMBERSHIP**
**SUPPLEMENT TO APPLICATION PART I**

1. As an Adult Benefit Contract Member (or as an applicant for adult benefit contract membership) I am sponsoring the following person(s) for limited membership:

| Last Name | First Name | Middle Name | Relationship to Applicant |
|-----------|-----------|-------------|---------------------------|
| ROOKS | GLENN | I | Spouse |
| | | | Dependent Child |
| | | | Dependent Child |
| | | | Dependent Child |
| | | | Dependent Child |

2. I must be an Adult Benefit Contract Member or must become an Adult Benefit Contract Member to be able to sponsor my spouse or dependent children for limited membership.

   a. ☑ I am an Adult Benefit Contract Member under Contract number *1284287*

   b. ☐ I am applying for adult benefit contract membership. If I do not become a member because my application is declined or because I do not accept the contract issued, this application for limited membership will be considered withdrawn.

3. Notwithstanding any provisions in the application and the contract being applied for, membership of the named spouse and/or dependent children is limited by the terms of this limited membership application.

   a. The membership rights provided to the Adult Benefit Contract Member by the Lutheran Brotherhood Bylaws are not provided to the Limited Member.

   b. Limited membership will not entitle the Limited Member to any other rights or privileges of membership in Lutheran Brotherhood except as granted by resolution of the Lutheran Brotherhood Board of Directors.

   c. Limited membership will not entitle the Limited Member to purchase additional insurance unless a new application for limited membership is completed.

   d. Limited membership may be changed to adult benefit contract membership if the Limited Member later qualifies under the rules of Lutheran Brotherhood.

On the basis of the above, I hereby make limited membership application to Lutheran Brotherhood on behalf of the above named person(s).

Dated 2/18 ____ 19 87

Signature of Sponsor

Signature of Representative: *Larry S. Finlay*

NAME Rooks Glenn

CONTRACT # 2306144

Amend End  Amend End
☐ ☐ Age    ☐ ☐ End
☐ ☐ Plan
☐ ☐ Amount

Inst/End w/Contract 774

Child UL(3 no cola soe

☐ 1035 ~ REFER TO 569
☐ Replacement Required        ☐ Enclose 1679
☐ Replacement RK              ☐ Photo Summary ~ X's
☐ Repl. Ltr. sent to:
☒ Sponsor's In Force Contact OK ~ OK to Separate
☐ Sponsor Now Applying ~ Do Not Separate
UNDERWRITERS FINAL ACTION
Approved   Add to #
☐ Non-Smoker  ☒ Standard
Amount $ 50,000

☒ WMDSTD  ☐ 1K    Rating Code
☐ COLA    ☐ 2  ☐ 3       ☐ Deny WMD
☒ Deny COLA REQUEST
☐ ADBSTD  ☐ 1K  ☐ 2  ☐ 3  ☐ Deny ADB
☐ GIO 1 ___        ☐ Deny GIO

☐ Std. Cv Aviation Coverage  ☐ Aviation Exclusion   Rating Code
☐ Aviation Coverage Per Mi/toe ___          AC ___
☐ UL Special Class %
A=26  AA=37.5  B=50  BB=62.5  C=75  D=100
E=126  F=160  H=200  J=290  L=300  P=400
☐ Temp Flat _____ Yrs
☐ Permanent Flat _____ Per/M        RSN
☐ Non Smoker UL Spouse $                   RSN
☐ Standard UL Spouse $
☐ UL Special Class Spouse ___ %
☐ Temp Flat _____ Yrs      Per/M     RSN
☐ Permanent Flat _____ Per/M         RSN
☐ Deny UL Spouse Benefit                    RSN
☐ Child Benefit $                           RSN
☐ Deny UL Child Benefit on ___
☐ Reconsider in ___ Years  ☐ Base  ☐ Spouse   RSN
☐
☐
Delivery              ☐ 360            ☐ H.S.
Requirements          ☐ Adverse Action Ltr  ☐ 765
                      ☐ 3221  1  2  4   ☐ 3222
☒ Membership ~ OK     ☐ 3379
☒ Beneficiary-OK  ☐ Beneficiary Incorrect  See Instructions
☐ Declined        Transaction Code
☐ Incomplete      Transaction Code
Remarks:

☐ ADVERSE ACTION LTR.     ☐ STATE NON-DISC. LAW

R. Guadahl _____   2-22-73
Underwriter              Date

Underwriter
Reinsurance

FORM #3781 UL4

| DATE | REQUIREMENTS | BY | DR NOT | FU |
|------|-------------|-----|--------|-----|
| | BSRPT/PHI | | | |
| | MED/PARA MED | | | |
| | MED/PARA MED - SPOUSE | | | |
| | HOS | | | |
| | EKG - BLOOD CHEM - X RAY | | | |
| | 171 | | | |
| | 176   DR: | | | |
| | RE: | | | |
| | 176   DR: | | | |
| | RE: | | | |
| | 3221  1  2  4  1222 | | | |
| | 1J A | | | |
| | 1J B | | | |
| | 1J C | | | |
| | 3221  1  2  4  3222 | | | |
| | 1J A | | | |
| | 1J B | | | |
| | 1J C | | | |
| | #2 | | | |
| | #2 | | | |

UNDERWRITING NOTES
No Cola

UNDERWRITING RECORD
Height _____ Weight _____        Subs ___
Spouse Height _____ Weight _____ Subs ___
Und. Notes

Credits
Form. Hist/Other
LB Final Classification
Payment   Date   Refunds   Date   Balance
$40.00    893

MIB Codes Reported On/Date                    (Cont.)

(over)

The Central Records Department certifies that this is a true copy of the original business records, reproduced in the regular course of business.

DATE 3-6-87
SUPERVISOR
CAMERA OPERATOR

NEW BUSINESS CONTROL

Filming Date 3-6-87
N.B. List Date
D'' Number
Camera Operator
Date Pulled 3-6-87    M.H.
Pulled By


**Thrivent Financial** *for Lutherans*™

4321 N. Ballard Road, Appleton, WI 54919-0001

Contract Number:    2306144

---

**MERGER AND NAME CHANGE ENDORSEMENT**

Effective January 1, 2002, Lutheran Brotherhood merged into Aid Association for Lutherans. Aid Association for Lutherans has changed its name to Thrivent Financial for Lutherans. All references in this contract to Lutheran Brotherhood are amended to read Thrivent Financial for Lutherans. All benefits and all other terms of this contract are unchanged, except that the liabilities and obligations attributed to Lutheran Brotherhood under this contract are now those of Thrivent Financial for Lutherans.

This endorsement is part of this contract.

Signed for Thrivent Financial for Lutherans

| President | *Bruce J. Nicholson* |
| Secretary | *Teresa J. Rasmussen* |

LM-ZZ-Merger-Name

# EXHIBIT B

CERTIFICATION OF VITAL RECORD

CERTIFIED

OFFICE OF VITAL STATISTICS

**CERTIFICATE OF DEATH**
**State of Delaware** (107)

DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LOCAL REG. NO.

**DECEDENT**

1. DECEDENT'S NAME (FIRST, MIDDLE, LAST)
GLENN     ROOKS, SR.     MALE     AUGUST 8, 2006

4. SOCIAL SECURITY NO. REDACTED 1627     56     REDACTED 1949     WILMINGTON, DE

HEARTLAND HOSPICE HOUSE     WILMINGTON     NEW CASTLE

MARRIED     JOANNE (MCGUIRE)     IRON WORKER     LOCAL UNION

DELAWARE     NEW CASTLE     WILMINGTON     75 BALL FARM WAY

NO     19806     WHITE     12

**PARENTS**

HENRY ROOKS     GLADYS (IVINS)

**INFORMANT**

JOANNE M. ROOKS, WIFE     75 BALL FARM WAY, WILMINGTON, DE 19808

**DISPOSITION**

DELAWARE VETERANS MEMORIAL CEMETERY     BEAR, DE

REDACTED     DOHERTY FUNERAL HOMES, INC.
1900 DELAWARE AVENUE WILM, DE 19806

AUG 1 4 2006

**PRONOUNCING OFFICIAL**

8/8/06

**CERTIFIER**

Neil L. ... field MD     G10001998     8-9-06
5661 Athletic Lane, Wilmington, De 19808

**CAUSE OF DEATH**

Gastric Carcinoma
(Cancer of Stomach)

(2) LOCAL REGISTRAR'S COPY

This is to certify that this is a true and correct reproduction or abstract of the official record filed with the Delaware Division of Public Health



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

L53991

# EXHIBIT C

PAGE 5/15 * RCVD AT 8/21/2006 8:35:23 AM [Central Daylight Time] * SVR:PWRTFAX00121/1 * DNIS:6373 * CSID: * DURATION (mm-ss):02-02

IN THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| In RE the Marriage of | : |
| Judith Lynne Rooks, | : |
| Petitioner, | : |
| vs. | :    Petition No. 669-90 |
| | :    CN90-9238 |
| Glenn Ivins Rooks, Sr., | : |
| Respondent, | : |

STIPULATION AND ORDER

This agreement made this 21st day of March, A.D., 1991, by and between Judith Lynne Rooks, (hereinafter "Petitioner"), and Glenn Ivins Rooks, Sr. (hereinafter "Respondent),

WHEREAS, the parties hereto were married to each other on December 23, 1986, in Wilmington, Delaware and

WHEREAS, two children were born of this marriage, namely REDACTED    born REDACTED, 1988, and REDACTED    , born REDACTED 1990;

WHEREAS, the parties intend by means of this Agreement to compromise, adjust and settle all questions between them as to their respective property rights and interests and all other rights and interests and all other rights, privileges, and duties ensuing out of their marriage relationship;

RECEIVED
1991 APR -9 AM 8:01
CIVIL CASE PROCESSING
UNIT

RECEIVED
FAMILY COURT
91 APR -8 PM 3:12

1

NO. 4715   P. 5/15

ADMIN        AUG. 21. 2006  9:38AM

PAGE 6/15 * RCVD AT 8/21/2006 8:35:23 AM [Central Daylight Time] * SVR:PWRTFAX00/2/1 * DNIS:6373 * CSID: * DURATION (mm-ss):03-02

NOW THEREFORE, in consideration of the promises and mutual covenants, agreements and releases herein contained, and intending to be legally bound, the parties do mutually covenant and agree as follows:

## I. AGREEMENTS CONCERNING SEPARATION

The Parties may and shall at all times continue to live separate and apart. Each shall be free from interference, authority and control, direct or indirect, by the other as fully as if he or she were single and unmarried. Each may reside and establish at such place or places as he or she may select, and he or she may engage in whatever occupation he or she elects.

Neither party hereto shall in any way molest or in any way interfere with the other or attempt to compel the other to cohabit or dwell with him or her by any means whatsoever.

## II. CUSTODY OF THE CHILD AND VISITATION

The parties shall have joint custody of their children with primary residence being with Petitioner. Visitation shall remain the same as that stated in a consent order entered into on January 10, 1991 by the parties.

The parties shall cooperate to the fullest possible extent in the upbringing of the child so that their relationship with parents will be as happy and harmonious as possible. Neither party shall ever in conversation with the children refer to the other party in any manner that might occasion any feeling of discord or that might diminish the proper devotion, respect and attachment that the

2

PAGE 7/15 * RCVD AT 8/21/2006 8:35:23 AM [Central Daylight Time] * SVR:PWRFTRFAX00/21 * DNIS:5373 * CSID: * DURATION (mm-ss):03-02

children should have for both parents. Neither party shall put any
obstacle in the way of the restoration and maintenance of love and
affection between the children and the other party, or in the way
of a reasonable and proper companionship between them; nor shall
either party do anything to estrange the children from the other
party.

The children's own best interest are at all times to be
regarded as paramount and, particularly as they grow older, their
wishes are to be considered with respect to custody and visitation.

III.  Alimony and Support

Each party relinquishes and forever waives his right to
alimony or spousal support from the others.

Child support shall be paid by Respondent to Petitioner
pursuant to a consent order entered into between the parties on
January 10, 1991.

Both parties agrees to keep their children, **REDACTED**
covered under their health insurance policies, so long as said
coverage is available at no extra cost to either party. If there
is an additional cost to cover, the cost will be included in the
Melson calculation. If anything remains unreimbursed then the
parties agree to share 50% responsibility each in lieu of the
$350.00 deductible that is generally calculated in the Melson
Formula.

3

PAGE 8/15 ° RCVD AT 8/21/2006 9:33:53 AM [Central Daylight Time] ° SVR:PWRTFAX002/21 ° DNIS:5373 ° CSID: ° DURATION (mm-ss):03-02

## IV. Personal Property

All personal property has been divided to the mutual satisfaction of both parties.

The 1978 Chrysler Newport shall remain Respondent's making him the sole owner and responsible for any payments, liability, insurance, maintenance or any other expenses incurred as a result of ownership of this automobile.

Respondent has open charges with Sears, Citibank and Macy's and agrees he will be solely responsible for payments on any purchase he has made since August 27, 1990 on these accounts, and will pay them in full.    He agrees at that time to remove Petitioner's name from these credit accounts; he agrees to indemnify and hold harmless Petitioner as to any monies owed on these accounts if incurred since August 27, 1990.

## V. Real Estate

The parties own as tenant by the entireties property known as 937 Woods Road, Bear, Delaware, 19701.   It is agreed said property shall be sold immediately, at fair market value, and the proceeds shall be dispersed as follows:

1) Pay off 1st Mortgage to Fleet Finance;

2) Pay off two home equity loans;

3) Pay off line of credit with Franklin Mint Credit Union;

4) Pay off 1988 Chevy Suburban financed with GMAC, at which time Respondent will sign off the title making Petitioner sole owner of said vehicle, and fully responsible for liability.

4

PAGE 9/15 * RCVD AT 8/21/2006 8:35:23 AM [Central Daylight Time] * SVR:PMRTFAXO0221 * DNIS:5373 * CSID: * DURATION (mm-ss):03-42

insurance, maintenance and any other expenses to be incurred as a result of ownership of this truck.

Petitioner agrees she will be responsible for the payment of mortgage, insurance, and taxes on said property from September 1, 1990, until the property is sold.

After the above has been accomplished, Petitioner shall receive any other funds available from the sale of the above-mentioned real estate.

VI. LIFE INSURANCE

Respondent has a $50,000.00 life insurance policy with Lutheran Brotherhood. Respondent agrees not to cash in, withdraw any of the proceeds or take a loan against said policy until after his youngest child attains the age of 21. Respondent furthermore agrees to name his children, REDACTED , as beneficiaries under this policy, naming Judith Rooks as Trustee of each child's share until each child attains the age of 21.

Respondent further agrees to name his four children, REDACTED Glenn and Heather, as his beneficiaries on any life insurance provided to him by his employer. He further agress to name Yrene Waldron, mother of REDACTED as Trustee of these two children's share until each child attains the age of 21, and further names Judith Rooks as Trustee for REDACTED s share until each of these two children attains the age of 21.

NO. 4715   P. 9/15                                          ADMIN        9:38AM   AUG. 21. 2006

PAGE 10/15 * RCVD AT 8/21/2006 9:35:23 AM [Central Daylight Time] * SVR:PWRITFAX00212/1 * DNIS:5373 * CSID: * DURATION (mm-ss):03-02

## VI. ATTORNEY FEES

Each party agrees to be responsible for the payment of his/her attorney's fees incurred in this matter.

## VII. MISCELLANEOUS

(a) Each of the parties hereto, and his or her heirs and assigns, shall, upon the request of the other, from time to time, make, execute and deliver any and all deeds of conveyance, instruments, releases and other documents which the other party may reasonably request for the purpose of selling, encumbering or otherwise dealing with any property owned by the party making such request, or for the purpose of making effective the provisions of this agreement.    The provisions of this paragraph shall be enforceable independently of and separately from the other provisions of this Agreement and any breach or alleged breach of the other provisions of this Agreement shall not constitute or be availed of as a defense against the enforcement of this paragraph.

(b) No modification or waiver of any terms of this Agreement shall be valid unless in writing and signed by both parties.   No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same, similar, or different nature.    The parties further agree that their reconciliation or apparent reconciliation shall not of itself affect the terms of this Agreement.

6

PAGE 11/15 * RCVD AT 8/21/2006 8:35:23 AM [Central Daylight Time] * SVR:FWRTFAX0021/1 * DNIS:5373 * CSID:* DURATION (mm-ss):03-02

(c) This Agreement shall be binding upon the heirs, executors, administrators, and assigns of each of the parties and shall be construed and applied in accordance with the laws of the State of Delaware.

(d) Except as herein otherwise provided, each of the parties releases and discharges the other from all obligations of support and maintenance and from all other claims, rights, and duties arising out of the marital relationship, and agrees that each of the said parties shall be hereby forever barred from any and all rights or claims by way of dower, alimony, curtesy, inheritance, descent, distribution, allowance for support, and from all other rights or claims as widow, widower, heir, distributee, survivor or next of kin and from any and all right from the other whether in real property or personal property, and whether now owned or enjoyed or hereafter acquired, including any and all rights which either would have in the estate of the other in case of testacy or intestacy and the right to receive or apply for letters of administration. Without limiting in any way the scope or extent of the foregoing general waiver, surrender or relinquishment, the Petitioner and Respondent expressly waive any right of election which may be granted by the laws of any country or any state of the United States of which the other party may be a resident at the time of his/her death, to share in the estate of the other as against any Last Will and Testament of the other.

7

PAGE 12/15 * RCVD AT 8/24/2006 8:35:23 AM [Central Daylight Time] * SVR:PWRTFAXOO2/21 * DNIS:5373 * CSID: * DURATION (mm-ss):03-02

(e) Respondent and Petitioner each waives, releases and forever discharges, the other and his or her heirs, executors, administrators, and assigns or and from any and all actions, suits, debts, claims, demands and obligations whatsoever in law and in equity, which he or she may or might have or claim to have against the other by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this Agreement, except for such rights and claims as either of them may have against the other under the terms of this Agreement and except for such actions as either of them may have against the other for divorce. It being the intention of the Petitioner and Respondent that here and after there shall be, as between them, only such rights and obligations as are specifically provided, all liability of every kind and nature on the part of the Respondent to the Petitioner, and on the part of the Petitioner to the Respondent, past, present and future, actual or potential, shall cease and terminate absolutely and forever upon the performance by the parties of the terms and conditions of this Agreement, and each of the parties hereto hereby waives all claims, present and future, in or to the property of the other.

(f) Any and all powers of attorney existing between the parties are hereby terminated.

(g) If either party fails in due performance of his or her obligations hereunder, the other party may, at his or her election, sue for damages for a breach of this Agreement or to

8

PAGE 13/15 * RCVD AT 8/21/2006 8:35:23 AM [Central Daylight Time] * SVR:PWRTFAX0021/1 * DNIS:5373 * CSID: * DURATION (mm-ss):03-02

enforce the same at law or in equity, and may seek such other remedies as may be available. Nothing herein contained shall be construed to restrict or impair either party's right to exercise this election. In the event of such a breach, the offending party shall be obligated to pay reasonable attorney's fees incurred by the other party to enforce or protect his or her rights hereunder. The amount of such cost in legal fees shall be determined by the Court having jurisdiction over the subject matter hereof to the extent that such Court shall assume the responsibility in respect thereto.

_Little Matushka Smythe_
Attorney for Petitioner
1823 Wood 4th St., Wilm, DE

_David S. Thomas_
attorney for Respondent
15-B Trolley Square, Wilm, De 19805

_Judith Lynne Rooks_
Judith Lynne Rooks

_Glenn Ivins Rooks, Sr._
Glenn Ivins Rooks, Sr.

IT IS SO ordered this_____ day of November, 1990.

Dated: ____4/9/1991____

_[signature] J._

AUG. 21. 2006 9:39AM    ADMIN    NIMIN    NO. 4715    P. 13/15

STATE OF DELAWARE:
                          : SS.
NEW CASTLE COUNTY:

    BE IT REMEMBERED that on this ___ day of _March_,
1991, personally came before me, the Subscriber, a Notary Public
for the State and County aforesaid, Judith Lynne Rooks, to me known
to be the person who executed the foregoing Agreement and
acknowledged that she executed the same as her free act and deed.

                              Judith Lynne Rooks

    IN WITNESS WHEREOF, the parties have hereunto set my hand
and seal on the day and year first above written.

                              NOTARY PUBLIC


STATE OF DELAWARE:
                          : SS
NEW CASTLE COUNTY:

    BE IT REMEMBERED that on this ___ day of _April_,
1990, personally came before me, the Subscriber, a Notary Public
for the State and County aforesaid, Glenn Ivins Rooks, Sr., to me
known to be the person who executed the foregoing Agreement and
acknowledged that he executed the same as his free act and deed.

                        Glenn Ivins Rooks, Sr.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal
the day and year first above written.

                        NOTARY PUBLIC

10

# EXHIBIT D

PAGE 3/15 * RCVD AT 8/21/2006 9:35:23 AM [Central Daylight Time] * SVR:PWRTFAX00/21 * DNIS:6373 * CSID: * DURATION (mm-ss):03-02



Judith L. Rooks, RN
4171 Dunstown Lane
Jacksonville, FL 32222
(904)406-3632

June 30, 2006

Attn: Beneficiary Department

Enclosed is a copy of Divorce agreement made on March 21, 1991 between Glenn Ivins Rooks, Sr. and Judith L Rooks which stipulates on page 5, section VI. LIFE INSURANCE: the $50,000.00 life insurance policy with Lutheran Brotherhood is not to be cashed in, have any proceeds withdrawn, or any loans taken against it until after the youngest child attains the age of 21. The youngest child REDACTED is age 16 (DOB: Feb. /90). It further agrees to name ; REDACTED as the Beneficiaries under this policy, naming myself (Judith Rooks) as Trustee of each child's share until each child attains the age of 21.

On page 6 section VII. MISCELLANEOUS: (b). No modifications or waiver of any terms of this Agreement shall be valid unless in writing and signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same, similar, or different nature. The parties further agree that their reconciliation or apparent reconciliation shall not itself affect the terms of this Agreement. (See section "c" also).

The reason I am directing this to your attention at this time is I have been notified that Glenn I. Rooks, Sr.'s oldest daughter Heather L Rooks has been named POA at this time of impending death and has submitted the forms to change the beneficiaries to include herself and her brother REDACTED which is not stipulated in this agreement. Please keep this document on file with his policy records for future reference when claims are filed.

Sincerely;

Judith L Rooks, RN

# EXHIBIT E

September 6, 2006

Mary Dahlman, ALHC, ACS
Advanced Claims Examiner
Death Claims and Service
Life and Health Product Service Operations Department, FSO
Thrivent Financial for Lutherans
4321 N. Ballard Road, Appleton, WI 54919-0001

Dear Mary:

We appreciate your sentiment of sympathy on the recent death of my father, Glenn I Rooks.

I am in receipt of your letter dated August 24, 2006 and am responding to same as primary beneficiary on Glenn Rooks' Thrivent Financial for Lutherans Contract 2306144.

After numerous consultations with various attorneys in Delaware and with Susan Jennepte, an investigator for the Insurance Commissioner of Delaware, it is my position that the primary beneficiary assignment issued by Glenn Rooks, sole owner of Contract 2306144 on 5/15/2006 and accepted by Thrivent Financial for Lutherans on the same date, is a legal, binding contract that supersedes the divorce decree/settlement with Judith Rooks.

Furthermore, the terms of the divorce decree do not specify that the beneficiaries listed in the divorce decree are "irrevocable", "primary" or "sole" beneficiaries.

Moreover, it is my position that the first contingent beneficiary assignment issued on 5/15/2006, satisfy the terms of the divorce decree.

I will, as primary beneficiary and executor of Glenn Rook's estate, upon receipt of the proceeds of the policy, hereby release and forever discharge Thrivent Financial for Lutherans aforesaid of and from all action, suits, accounts and demands whatsoever, for or concerning Contract 2306144.

If you have any questions, please contact me at 302-545-4011

Sincerely,

Heather L. Rooks, DC

cc: Mark Cilento 52145214
cc: Ms. Susan Jennepte, Insurance Commissioner's Office- Case # 286980

By Fax and Certified Mail

# EXHIBIT F

50 7066126



WILMINGTON — PIKE CREEK

August 24, 2006

Thrivent Financial for Lutherans
4321 N. Ballard Road
Appleton, WI 54919-0001

ATTN: Life Claims

RE: Glenn I. Rooks, Sr.    REDACTED
    Social Security #    ·1627

Enclosed you will find a Certified Death Certificate, an Insurance Assignment Form, a copy of the Statement of Goods & Services, a copy of Mr. Rooks' Obituary, the Claimant's Statement and the Thrivent Financial Insurance Policy for Glenn I. Rooks, Sr. who passed away on August 18, 2006.

If you should have any questions, please feel free to contact me.

Sincerely,

Sandy H. Jones
Family Care Consultant/
Office Manager

/shj

Enclosures

**Thrivent Financial for Lutherans®**

4321 N. Ballard Road, Appleton, WI 54919-0001
800-THRIVENT (800-847-4836) • www.thrivent.com

| Thrivent ID |
| --- |
|  |

# Deceased's Information Statement

All information requested on this form for the Insured/Deceased must be completed to enable the claim to be properly evaluated and processed.

### Section A - Deceased Information

| Name of deceased (print title, first, middle, last name and suffix, as applicable) | Date of birth (mm/dd/yyyy) |
| --- | --- |
| GLENN IVINS ROOKS, JR | REDACTED |

| Address of deceased | City |
| --- | --- |
| 75 BALL FARM WAY | WILMINGTON |

| State | ZIP code |
| --- | --- |
| DE | 19808 - 2082 |

| Occupation at death | Date last worked |
| --- | --- |
| DISABLED STEELWORKER | 1992 |

| Date of death | Place of death | Cause of death |
| --- | --- | --- |
| 8/08/06 | HEARTLAND HOSPICE HOUSE | GASTRIC CARCINOMA |

### Section B - See instructions. Complete this section only for life insurance claims when required.

List Physician(s) Consulted for *Last Illness*

| Name, Address and Phone Number | Date deceased first complained of or gave indication of last illness | Date deceased first consulted medical practitioner for last illness |
| --- | --- | --- |
| ① V.A. HOSPITAL<br>2400 KIRKWOOD HIGHWAY<br>WILMINGTON, DE 19002<br>RAMONA CHAKAVARTH, MD - GP<br>DR. SIMMONS        - SURGEON<br>DR'S. CAMPWALLA & DR. KONWINHA ONCOLOGISTS | Symptoms began 12/2003<br>3/17/2004 diagnosed | |

List Physicians Who Attended/Treated Deceased and All Hospitals Where Treated *During Past Three Years*

| Name, Address and Phone Number | Dates of Visit | Disease or Condition Treated |
| --- | --- | --- |
| ① VA HOSPITAL<br>PITTSBURG, PA<br><br>SURGICAL PROCEDURE - LIVER SPECIALTY<br>        TEAM<br>② SAME AS ABOVE | April 17-24<br>2006 | GIAKSTRIC CARCINOMA<br>METASTASIS |

28E   R8-06                                      1

# Authorization for Information Regarding a Deceased Person

## (This authorization complies with the HIPAA Privacy Rule)

This authorization applies to Thrivent Financial for Lutherans, Thrivent Life Insurance Company, and Thrivent Insurance Agency, Inc., their employees, representatives, agents, reinsurers and any other persons performing business, legal, medical or insurance services for them or on their behalf, hereafter called "You" or "Your."

For the purpose of evaluating and processing my claim for insurance benefits, You may need to obtain, use or disclose any and all physical and mental health information, including but not limited to services for preventive, diagnostic and therapeutic care, tests, counseling and medical prescriptions; and non-health information, including but not limited to financial, insurance, credit, occupational, avocational and driving history about _GLENN WINSROOKS SR_ deceased, date of birth _REDACTED_, date of death _8/00/2006_.

I authorize any health care professional, medical facility, mental health facility, laboratory, paramedical facility, medical examiner, pharmacy, medical records service, prescription history clearinghouse, other financial institution, Your affiliate, health care component of Your company, Department of Motor Vehicles, Social Security Administration, consumer reporting agency, Medical Information Bureau (MIB), Health Claim Index (HCI), employer, case manager, social worker, financial advisor, attorney, family member, and acquaintance to provide information about the above-named deceased person, including the entire medical record, to You.

Information about the health of the deceased person may be released as required or permitted by law, such as to the Medical Information Bureau (MIB) in an effort to deter fraud, misrepresentation or criminal activity. This health information, which is used or disclosed pursuant to this authorization, may be subject to redisclosure by the recipient, and may no longer be protected under federal law. I authorize you to share any information concerning this claim with Your affiliates for purposes of processing a death claim or changing registration on accounts. I understand this information will not be disclosed to non-affiliated third parties that are not conducting specific business activities for or on behalf of You.

This authorization is valid for 24 months following the date of my signature shown below. A copy, image or facsimile of this authorization is as valid as the original. I have the right to revoke this authorization in writing as outlined in the Privacy of Information about Your Health notice. I acknowledge that such a revocation is not effective to the extent You have relied on the use or disclosure of health information or to the extent that You have a legal right to contest the insurance contract or my claim under the insurance contract.

I understand You may not be able to evaluate and/or process my claim for insurance benefits if I do not agree to the terms of this authorization. I have read (or have had read to me) this authorization, and I agree to its terms as indicated by my signature below. I am entitled to receive a copy of this authorization.

| Signature of claimant and date signed (mm/dd/yyyy) | Description of claimant's authority to act or relationship to deceased |
|---|---|
| _Rooks, DC_   08/21/2006 | _DURABLE POWER OF ATTORNEY_<br>_DAUGHTER & 1° BENEFICIARY_ |

Note: This authorization is required when:
1. A life insurance contract has been in force for two years or less, or;
2. There is an accidental death benefit rider on the contract, or;
3. In any situation involving unusual circumstances of death.

If additional information is needed, Thrivent Financial for Lutherans will obtain it or contact a beneficiary for it. In either case, it is likely to take additional time before a final claim decision can be made and communicated to the claimant.

28E    R3-06                              2

**Thrivent Financial for Lutherans®**

4321 N. Ballard Road, Appleton, WI 54919-0001
800-THRIVENT (800-847-4836) • www.thrivent.com

**Claimant's Statement**

**Section A - Deceased Information**

| Name of deceased (print title, first, middle, last name and suffix, as applicable) | Date of birth (mm/dd/yyyy) |
|---|---|
| *GLENN IVINS ROOKS, SR.* | *REDACTED* |

**Section B - Claimant Information**

| In what capacity are you claiming these proceeds? | Relationship to deceased |
|---|---|
| ☐ Trustee  ☒ Executor/Administrator of estate  ☐ Other | *DAUGHTER* |
| ☐ Named beneficiary  ☐ Legal Guardian for named beneficiary  (attach explanation) | |

| Name of claimant (print title, first, middle, last name and suffix, as applicable) | Date of birth (mm/dd/yyyy) |
|---|---|
| *Dr. HEATHER LEIGH ROOKS* | *REDACTED* |

| Address of claimant | Area code and phone |
|---|---|
| *50 RIVER WOODS DRIVE* | *302 545 4011* |

| City | State | ZIP code | Soc. Sec./Tax ID # |
|---|---|---|---|
| *WILMINGTON* | *DE* | *19809* | *REDACTED · 4054* |

**Section C - Distribution Request**

Life insurance contract number(s):
*2306144*

☐ Apply to Thrivent Financial Mutual Fund
　☐ New　☐ Existing Mutual Fund
　Account number - _____

☐ Apply premium payment to:
　☐ Life contract number - _____
　☐ Health contract number - _____
　☐ Annuity contract number - _____

☐ Apply loan payment to:
　Contract number - _____

☐ Apply to Settlement Option. Complete Application
　for Settlement Agreement (form 9366) and a form
　W4P for the Settlement Option.

☐ Apply to Thrivent Financial Bank
　☐ New　☐ Existing
　Account number - _____

☐ Auto FPDA, minor beneficiary, only

☐ Other (See Special Instructions below.)

☐ Cash - complete for a partial or total cash disbursement.
　☐ Lump Sum Total
　☐ Specific Amount - $ _____
　　Interest will be added to this amount unless
　　instructed otherwise.

Select A, B or C.

☐ A. Direct deposit into checking account number

　Attach a voided check. Do not submit a
　deposit slip.

☐ B. Send check to financial representative.

☒ C. Send check to beneficiary.

**Special Instructions**

*INSURANCE ASSIGNMENT TO DOHERTY FUNERAL HOMES in WILMINGTON, DE
TO PAY FOR FUNERAL SERVICES.
REMAINING BALANCE IN A CHECK MADE TO 1° BENEFICIARY.*

26E    R3-06                                3

DR. HEATHER LEIGH ROOKS
Name of claimant (print title, first, middle, last name and suffix, as applicable)

| Annuity or Settlement Agreement contract number(s) | | | | | |
|---|---|---|---|---|---|
| | | | | | |

**Note:** A Claimant's Distribution Request for each Variable Annuity Contract must be for the total value of that contract payable to that Claimant.

**Annuitant Exchange/Spousal Beneficiary Option is Available - ONE BOX MUST BE CHECKED** for each contract and the contract number written on the corresponding line:
☐ Exercise Annuitant Exchange/Spousal Beneficiary Option for:
Contract number(s) - _____
Complete Annuitant Exchange/Spousal Beneficiary Option (form 11997) and Beneficiary Designation (form 307).
☐ I choose not to exercise the Annuitant Exchange/Spousal Beneficiary Option for:
Contract number(s) - _____

☐ **Spousal Beneficiary Rollover to a New or Existing - IRA to IRA, TSA to TSA, QRP to QRP.** Complete Transfer/Direct Rollover/Conversion Request (form 11502).
Contract number - _____

☐ **Non-spouse IRA to IRA Transfer (or TSA to TSA Transfer), also referred to as Inherited IRAs.** Complete Transfer/Direct Rollover/Conversion Request (form 11502).
Contract number - _____

☐ **Apply to Settlement Option.** Complete Application for Settlement Agreement (form 9368) and a form W4P for the Settlement Option.

☐ **Apply to Thrivent Financial Bank**
☐ New    ☐ Existing
Account number - _____

☐ **Apply to Thrivent Financial Mutual Fund**
☐ New    ☐ Existing Mutual Fund
Account number _____

☐ **Apply premium payment to:**
☐ Life    ☐ Health    ☐ Annuity
Contract number _____

☐ **Apply loan payment to:**
Contract number(s) _____

☐ **Continue payment on existing Mpls settlement option.** No application is required. Complete Beneficiary Designation (form 307).

☐ **Other** (See Special Instructions on pg. 3.)

☐ **Cash** - complete for a partial or total cash disbursement.
☐ Lump Sum **Total**
☐ Specific Amount - $ _____
Interest will be added to this amount unless instructed otherwise.
Select A, B or C.
☐ **A.** Direct deposit into checking account number
_____
Attach a voided check. Do not submit a deposit slip.
☐ **B.** Send check to financial representative - not allowed for variable annuity contracts.
☒ **C.** Send check to beneficiary.

**Qualified Plan, 403(b) or Tax Sheltered Annuity Distribution Acknowledgement (required for 403(b) Custodial Accounts, Tax Sheltered Annuities, Money Purchase, Profit Sharing and Nontransferable Deferred Annuities)**
I acknowledge that if the distribution from the above plan is an eligible rollover distribution and is not a direct rollover to a qualified retirement plan or IRA, the taxable amount of the distribution will be subject to 20% income tax withholding. I understand that the 20% income tax withholding will not apply if I roll over the taxable amount of the distribution to a qualified retirement plan or IRA. I also acknowledge that I have received and read the 403(b) and Qualified Plan Distribution Disclosure form (9972). I acknowledge that I have the right to delay making a decision regarding the distribution from the above plan for at least 30 days after receiving the 403(b) and Qualified Plan Distribution form and have been given this opportunity. I hereby elect to waive my right to the 30 day waiting period and request Thrivent Financial to make this distribution as soon as administratively possible. Due to the tax consequences, I have been advised to seek competent tax advice pertaining to this distribution.

**Section D - Required Minimum Distribution (RMD)**
On the date of death, if the deceased was past the Required Begin Date (RBD), RMD federal tax rules apply when any monies, including death proceeds, are payable from an IRA, TSA or other pension plan. The RBD is April 1 the year after the annuitant attained age 70 1/2.
RMD for the year of death is required to be distributed prior to any tax free movement of funds or prior to December 31 in the year of death (whichever is the earliest).
Unless the box below is checked, I authorize distribution of the RMD based on current RMD rules and the RMD amount quoted on the Death Claim Service Kit.

☐ The RMD requirement has been satisfied elsewhere. Claimant is responsible for complying with RMD requirements.

28E    R3-06                                4

DR. HEATHER LEIGH RODKS

Name of claimant (print title, first, middle, last name and suffix, as applicable)

**Section E - Substitute W-4P. Complete this section only for claims for death proceeds from annuity contracts or settlement agreement contracts.**

The distribution you are requesting from your contract(s) with Thrivent Financial will be subject to income tax withholding unless you elect not to have an amount withheld. Withholding is completely voluntary. Withholding generally applies to the portion of the distribution that is subject to federal income tax. All or part of the distribution may be subject to federal income tax.

You may elect not to have withholding apply to the distribution by signing and dating the election below. If you do not sign the election, federal and possibly state income tax will be withheld from the taxable portion of the distribution. If you elect not to have withholding apply to the distribution, you may be responsible for the payment of estimated taxes. There are penalties for not paying enough tax during the year, either through withholding or estimated tax payments. You may wish to check with your tax advisor to determine if withholding is necessary.

**If no box is checked, federal (10%) and possibly state income tax will be withheld.**

**State Tax Withholding:**
(Not allowed in AK, FL, HI, NV, NH, SD, TN, TX, WA, and WY.)

**Federal Tax Withholding:**

☒ Do not withhold for federal income tax.

☐ Withhold federal income tax at a rate of 10%, or as noted _____ % (must be at least 10%).

☒ Do not withhold for state income tax.

☐ Withhold the applicable state income tax rate, or as noted _____ %.

**North Carolina residents:** If you are electing not to have withholding on your distribution, Form NC-4P is required.

**Section F - Substitute W-9**

**Taxpayer Identification Number Certification**

I certify under penalties of perjury that:

1. The Social Security Number or Taxpayer Identification Number provided above is correct (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified me that I am no longer subject to backup withholding and

3. I am a U.S. person (including U.S. resident alien).

You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| Signature of claimant and capacity (i.e. trustee, guardian, etc.) and date signed (mm/dd/yyyy) | Soc. Sec./Tax ID # |
|---|---|
| DR Cook DR  1° BENEFICIARY / DAUGHTER    00/21/2004 | REDACTED -6054 |

| Name of financial representative  MARK CILENTO | Code number |
|---|---|

**FOR YOUR PROTECTION, state laws require the following to appear on this form: Any person who knowingly and with intent to defraud or deceive any insurance company or person files or facilitates the filing of a statement of claim containing any materially false information, or conceals information concerning any fact material to the statement, is guilty of insurance fraud, which may be a felony crime, subject to civil penalties or criminal prosecution, including fines and/or confinement in prison.**

If you have questions regarding the claim form, please contact your Thrivent Financial Representative or call Death Claims at 1-800-847-4836.

28E    R3-06                                5

# Doherty Funeral Home
1900 Delaware Avenue
Wilmington, DE  19806-
(302)652-6811

August 21, 2006

Mrs. Joanne Rooks
75 Ball Farm Way
Wilmington, DE  19808-

The Funeral Service for Mr. Glenn I. Rooks Sr.

We sincerely appreciate the confidence you have placed in us and will continue to assist you in every way we can. Please feel free to contact us if you have any questions in regard to this statement.

THE FOLLOWING IS AN ITEMIZED STATEMENT OF THE SERVICES, FACILITIES, AUTOMOTIVE EQUIPMENT, AND MERCHANDISE THAT YOU SELECTED WHEN MAKING THE FUNERAL ARRANGEMENTS.

**PROFESSIONAL SERVICES**

| | |
|---|---|
| Services of Funeral Director and Staff, | $1845.00 |
| Embalming, | $745.00 |
| Dressing | $295.00 |
| **USE OF FACILITIES/EQUIPMENT/PERSONNEL** | |
| Use of Facilities and Staff for visitation (Even. 2hr min.) | $500.00 |
| Use of Facilities & Staff for Funeral Ceremony or Mem. Se | $575.00 |
| **TRANSPORTATION** | |
| Transfer remains to Funeral Home* | $350.00 |
| Funeral Coach* | $350.00 |
| Family Car* | $350.00 |
| Flower Vehicle/Disposition* | $95.00 |
| **SUPPLEMENTAL GOODS AND SERVICES** | |
| Custom Memorial Cards (per 100) | $40.00 |
| Personalized Acknowledgement Cards (per 100), | $20.00 |
| Guest Register Book | $20.00 |
| **FUNERAL HOME SERVICE CHARGES** | $5185.00 |
| **SELECTED MERCHANDISE:** | |
| Casket | $2995.00 |
| **THE COST OF OUR SERVICES, EQUIPMENT, AND MERCHANDISE THAT YOU HAVE SELECTED** | $8180.00 |
| **Cash Advances** | |
| Certified Death Certificate | $90.00 |
| Newspaper Charges | $535.28 |
| Flowers, | $275.00 |
| Honor Guard | $100.00 |
| Police Escort | $140.00 |
| **TOTAL CASH ADVANCES AND SPECIAL CHARGES** | $1140.28 |
| **CONTRACT PRICE** | $9320.28 |
| **TOTAL AMOUNT DUE** | $9320.28 |

## INSURANCE ASSIGNMENT

**CERTIFIED**

I, _____**HEATHER ROOKS**_____, being entitled to receive benefits under
Beneficiary

Policy No. _____**#2306144**_____

issued by _____**THRIVENT FINANCIAL FOR LUTHERANS**_____
Insurance Company

on the life of _____**GLENN I. ROOKS, SR.**_____, now deceased,

and having contracted with and being indebted to Doherty Funeral Home of 1900 Delaware Avenue,

Wilmington, DE 19806, for funeral services and merchandise for the deceased in the amount of

**NINE THOUSAND THREE HUNDRED TWENTY DOLLARS & ————————28/100**   $ 9,320.28

do hereby set over, assign and transfer unto said Funeral Director the sum of

**NINE THOUSAND THREE HUNDRED TWENTY DOLLARS & ————————28/100**   $ 9,320.28

out of the proceeds of said Insurance Policy; and I hereby authorize and direct said Insurance

Company to make its check payable to said Funeral Director for the assigned amount and to pay the

remainder of the proceeds of said Insurance Policy, if any, to me.  A statement of charges for funeral

expenses for the deceased is attached hereto.

IN WITNESS WHEREOF, I have hereunto set my hand and seal on the _21st_ day of _August_

20____

_____        Witness: _____
Beneficiary

BB RIVER WOODS DR2
WILMINGTON, DE  19809              _____
Address                            DOHERTY FUNERAL HOMES, INC.

STATE OF DELAWARE    ) ss:
COUNTY OF NEW CASTLE )

On this _21st_ day of _August_ in the year Two Thousand Six, before me personally came
_Heather Rooks_ to be known and known  to be the same person described in and
who executed the foregoing Instrument and __ he duly acknowledged to me that __ he executed same.

_____
Notary Public
**SANDRA H. JONES**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
**My Commission Expires Dec. 22, 2008**

# EXHIBIT G

MAY 18, 2006 13:45                          3027774002                                Page 2
     Thrivent Financial   5/11/2006 10:13 AM   PAGE   2/003   Fax Server

# BEST COPY AVAILABLE

## Beneficiary Designation – Common

| | Thrivent ID |
|---|---|
| | 507066126 |

This beneficiary change is subject to the provisions printed on 307B, page 2.

Contract no.(-s) 2306144

Check one:
- [x] Basic Insured/Annuitant
- [ ] Term Life Insurance Rider
- [ ] Child Rider (one designation applies for all children under a child rider)
- [ ] Second Insured/Annuitant (spouse rider, joint life/annuity contract)

Name of insured/annuitant/payor (print title, first, middle, last name and suffix, as applicable)
Glenn I Rooks SR

List full name, **relationship** and address for each beneficiary.

**Primary Beneficiary**
Heather L Rooks, daughter

**First Contingent Beneficiary**

REDACTED

**Second Contingent Beneficiary**

Signature of owner/controller and date signed (mm/dd/yyyy)
*Glenn Rooks Sr.* 5-15-06
Print name and code of financial representative

Signature of witness and date signed (mm/dd/yyyy)
5-15-06
Thrivent Financial approval

To be read by present owner – Consent of spouse.
It is your responsibility to determine whether consent of your spouse is needed based upon the community/marital property laws in your state or other legal requirements. If consent is needed and not obtained, this beneficiary designation may be contested.

Signature of spouse and date signed (mm/dd/yyyy)

This form may be used for Thrivent Life Insurance Company (Minneapolis, MN 55415), a wholly owned subsidiary of Thrivent Financial for Lutherans.

Please print below
Name of owner/controller
GLENN I ROOKS, SR.
Street or RR and box number
75 BALL FARM WAY WILMINGTON, DE
City
State  ZIP code
19808

**Thrivent Financial for Lutherans**
4321 N. Ballard Road, Appleton, WI 54919-0001
800-THRIVENT (800-847-4836) • www.thrivent.com

307B  R9-05                                                      Page 1

MAY 11, 2006 12:12                       Thrivent Financial                      Page 2